J. M. DORR, Appellant, v. LORE ALFORD.

**Contracts:** ASSIGNABILITY. Where a corporation owning land subject to a mortgage entered into certain contracts with defendant, and agreed to hold the land in trust, and to sell, collect, and pay over to defendant a certain proportion of the proceeds arising from the sale thereof, less the amount of the mortgage, on his agreement to pay $1,000 on each contract taken out by him, and a pro rata share of survey and grading expenses, such contracts were assignable; and a pledge thereof by the corporation as collateral to the mortgage, or its failure to pay the same, under an agreement that it would collect and pay the balance due on such contracts to the mortgagee, to be applied on the mortgage, constitutes a valid assignment thereof.

CONSTRUCTION. Where a corporation owning land subject to a mortgage agreed with defendant to hold it in trust, and to sell, collect, and to pay over to him a certain proportion of the proceeds, on his agreement to pay $1,000 in installments, defendant was not entitled to demand a conveyance of any portion of the lands, but only to share in the proceeds arising from the sale thereof.

SPECIFIC PERFORMANCE. Where a corporation owning land agreed to hold the same in trust, to sell, collect, and to pay over to the defendant a certain proportion of the proceeds, less the amount of a mortgage due thereon, on his agreement to pay $1,000 in installments, etc., and on the non-payment of the mortgage, arising from the contract holder's failure to pay installments, the corporation assigns such contracts to the mortgagee, to apply the balance due thereon in payment of the mortgage, the fact that its payment would exhaust the lands and render the corporation insolvent, so that neither the mortgagee nor the corporation would be able to perform the contract, constitutes no bar to the mortgagee's recovery on the contract; such inability having arisen through no fault of the mortgagee or the corporation.

FRAUD: *Waiver.* Where defendant, after becoming fully informed of false and fraudulent representations inducing his contract, received benefits thereunder, and made no claim of fraud before the commencement of an action thereon by the assignee of the corporation with which the contract had been made and of which he had become a director, he was not entitled to allege such fraud as a defense to the action.

**Pleading:** PRAYER: *Construction of.* A prayer in plaintiff's bill to enforce payment of a balance due on a land contract, asking a decree requiring defendant to pay the amount due by a certain day, and, in default thereof, that plaintiff have judgment, is demanded for a money judgment, enforcible by execution, and not for a decree of specific performance.

*Appeal from Polk District Court.*—Hon. C. P. Holmes, Judge.

Wednesday, May 9, 1900.

This action was originally commenced at law to recover a money judgment upon certain contracts. On motion of the defendant the case was transferred to and tried as in equity, over plaintiff's objections, which objections he now waives, and the case is therefore before us for consideration as in equity, on the appeal of the plaintiff from a judgment dismissing his petition.—*Reversed.*

*Dudley, Coffin & Byers* and *Thos. F. Stevenson.*

*Lore Alford* and *Bowen & Brockett* for appellee.

Given, J.—I. The record before us is quite voluminous and may only be noticed in a general way. The issues and facts are in most respects the same as in *Dorr v. Cory,* 108 Iowa, 725, decided after the holding in this case in the court below. On January 14, 1890, the plaintiff, being the owner thereof, conveyed to J. H. Snooke, as trustee for the West End Syndicate, a co-partnership composed of A. W. C. Weeks, R. G. Scott, and J. N. Neiman, for the consideration of forty-eight thousand forty-four dollars and sixteen cents, a certain thirty-seven blocks, containing eight hundred and thirty-nine lots, in the plat of the West End, an addition to the city of Des Moines. Mr. Snooke, as such trustee, executed to Mr. Dorr eight hundred and thirty-nine promissory notes, aggregating forty-seven thousand seven hundred and thirty-six dollars and eighty-four

cents, being the balance of the purchase price, and a mortgage on said real estate to secure the same. The West End Syndicate entered into a number of contracts with Mr. Cory and others as shown in the case of Cory, which contracts in most respects are the same as those thereafter entered into with this defendant, and upon which this action is brought. On July 2, 1890, said partnership became incorporated under the same name, to-wit, the West End Syndicate, and all the property of the partnership was transferred to it. On March 3, 1891, said corporation and this defendant entered into ten contracts, in writing, by each of which the corporation agreed "to hold in trust, sell, collect, and pay over to the party of the second part the proceeds from the sale of the one-hundred and fiftieth of the following described real estate," describing the real estate conveyed by Mr. Dorr. In consideration of this, the defendant agreed to pay upon each contract one thousand dollars in four equal annual installments, less the amount credited on the contracts, with eight per cent. interest, "and also their pro rata share of any amount due or to become due for surveying, platting, and grading of said subdivision when called for by the board of directors." It is provided in said contracts that the corporation shall have a lien on each share for the unpaid purchase price; that the care, management, and disposition of the property shall be in the board of directors; that the corporation shall hold the land in trust for all parties interested; have power to make contracts, deeds, leases, and mortgages on behalf of its beneficiaries, to take mortgages on sale of lots, and on payment to release or assign such mortgages; "provided, however, that all such deeds, leases, contracts, and conveyances shall first be ordered by its board of directors." It is further provided that: "All money hereafter derived from the sale of lands and lots, or from material sold from said premises, or from rentals received, shall, after payment of taxes, interest, incumbrances, and expenses, be ratably divided among the parties in inter-

est. It is also understood and agreed that there is an incumbrance of forty-seven thousand seven hundred and thirty-six dollars and eighty-four cents upon said land; to be payable on or before six years from Jan. 14, 1890, and which is distributed upon the lots and subdivision, and payable out of the proceeds of sales and rents." The contracts with Mr. Cory and others, being with the co-partnership, were worded accordingly; but the difference in the language is not such as to render their effect different from that of the contracts with the defendant. In the Cory contracts, money derived from sale of lots, material, or rents was first to be applied to the payment of taxes, interest, incumbrances, and expenses," while in this it is to "taxes and expenses." In those contracts, after the word "subdivision" in the paragraph last quoted, are the words, "and payable out of the proceeds of sales like this." We may say here that we do not think the differences in the language between these and the Cory contracts are such as to vary their meaning or effect. The corporation having failed to pay the principal and interest due to Mr. Dorr on the mortgage debt, a further contract, in writing, was entered into by Mr. Dorr, of the first part, and the corporation, of the second part, in substance, as follows: The corporation placed in the hands of Mr. Dorr, as collateral security to said mortgage indebtedness, said contracts with the defendant Alford and a number of like contracts with other persons, "with all the balance due second party on said contracts, amounting to about $33,000." Said contracts contain the following: "It is agreed by first party that second party shall have charge of the collection on said collaterals at their own expense, and shall pay them in, on the order of first party, to a Des Moines bank named by first party, which shall receipt for the same, less any tax paid, from said fund on said mortgaged property. Said payments or collections, when made, to apply on the tax assessed against lots in said

West End addition, interest and principal on said above-mentioned mortgage; all funds to be applied at any and all times to the payment and release of any particular lot or lots that second party may elect to have released. When the entire amount of incumbrance on all the lots shall in this way or otherwise have been released, then said mortgage shall be released in full, and said contract surrendered to second party. Said collateral shall at no time be separated from said notes or become security for debts of first party. And, in consideration of said collateral being so placed and turned over to first party, he agrees for himself, his heirs and assigns, not to bring any suit on account of the nonpayment of any interest due on the above-mentioned mortgage of $47,737 until the date on which said mortgage becomes due, to-wit, January 14, 1896." The defendant, Alford, is entitled to certain credits on said contracts, and the plaintiff, Dorr, as holder of said contracts as collaterals, brings this action thereon to recover the balance due, the corporation having failed and refused to so do. It appears that Mr. Weeks held ten contracts the same as those held by Mr. Cory and others; that an effort was made to induce the defendant to take said contracts of Weeks, which resulted in the making of said ten contracts between the defendant and the corporation. The defendant answered at great length, setting up a number of reasons why the plaintiff should not have the relief demanded, and which will be hereafter noticed,—among them, the defense that said contracts were obtained by fraud.

II. Defendant's first contention is that the contracts sued upon are not assignable, were not assigned to the plaintiff, and therefore he is not the real party in interest, and cannot sue thereon. As to their assignability, they are the same as the Cory contracts, and were assigned to plaintiff as those were. In that case we said, "The record fails to show any valid objection to the transfers of the contracts to the plaintiff, or to a recovery by him

of the amount due thereon in this action. Following this we held that those contracts were not only assignable, but were assigned to the plaintiff.

III.   The defendant's counsel, assuming that specific performance on the part of the defendant of the contracts sued upon is the relief asked, and that plaintiff's mortgage will exhaust the real estate, and leave the corporation insolvent, contend that neither the corporation nor the plaintiff is able to perform the contracts on the part of the corporation, and therefore the plaintiff is not entitled to the relief asked. It is the law that the party asking a decree to enforce specific performance by one party to a contract must show that the other party is ready, able, and willing to perform his part; but, as we view it, this is not such a case. It is true that when forced into equity the plaintiff did ask a decree requiring the defendant to pay plaintiff the amount due within a day to be named, and, in default, that plaintiff have judgment. This is nothing more than a demand for a money judgment. There is nothing for the defendant to do in performance but to pay the money. Such performance is not enforced by decree, but by judgment and execution. Counsel for defendant construe the contracts as being for the conveyance of real estate, and therefore insist that the corporation cannot perform. The contracts upon the part of the corporation are not to convey, but "to hold in trust, sell, collect, and pay over to the party of the second part the proceeds from the sale" of the party named. Defendant has no right to a conveyance, but simply to share in the proceeds. The defendant promised to pay his note, conditioned upon his receiving proceeds he promised to pay "in four equal annual installments,—on the first day of January, in the year hereafter;" that is, after March 3, 1891. There is no limit to the time in which the corporation is to hold, sell, collect, and pay over, and we cannot say but that, if defendant's

contracts and other like contracts are promptly paid, the corporation may be able to do these things. If it should be held that the corporation is not and will not be able to perform on its part, it is surely not because of any act of the plaintiff. The failure of the enterprise is clearly traceable to the refusal of the defendant and others with whom the corporation had like contracts to pay, as they had agreed, a refusal for which the defendant is largely responsible, and which was advised and made in part at least, because of a large shrinkage in real-estate values. If these collaterals had been promptly paid, they would have gone far towards satisfying the mortgage debt, of which all parties had knowledge, and would have left the corporation able to sell, collect, and pay over. We do not find that either the corporation or the plaintiff did anything that rendered them unable to perform, and we are inclined to believe that with prompt payment of these contracts the corporation would have gone forward to a successful management of the enterprise. If it should be said that neither the corporation nor the plaintiff is able to perform the contracts, still, in view of the nature of the contracts, the unconditional obligation of the defendant to pay, and of the fact that the inability was brought about, in part at least, by the defendant, not by the plaintiff or the corporation, we conclude that that inability should not defeat the plaintiff's right to the relief asked.

IV. We next inquire as to the fraud alleged by the defendant in the procuring of the contracts sued upon. We will not attempt to set out these charges nor the evidence in detail. There is evidence tending to show that extravagant and false representations were made to the defendant as to the character and value of the land, the price agreed to be paid to Mr. Dorr for it, and of other matters set up in the answer. Question is made as to whether the corporation or the plaintiff is bound by the representations of the parties making them; but, as we view

the case, this need not be determined. While there is no doubt but these representations were made to the defendant to induce him to enter into the contracts in suit, it is claimed that in doing so he did not rely upon the representations, but examined for himself. Before entering into the contracts he examined the land, and made a careful and thorough examination of the books and files of the corporation. If it be true that he did rely upon said representations complained of as fraudulent, it is certainly true that thereafter he had full information as to all the matters charged; and with that information he continued to stand upon his contracts, to receive the benefits thereof, and to act with and for the corporation, not only as a party to the contracts, but as one of its directors. As late as December 1, 1894, the defendant wrote to the plaintiff, saying: "I intend to pay all I owe next year, or by Jan. 1, 1896; but I cannot pay it by Jan. 1, 1895. I paid $1,000 last spring." It does not appear that this claim of fraud was ever made before the commencement of litigation. In the law action of Cory we reversed the holding that the issue of fraud should have been submitted to the jury. In this equity case the issue is before us for determination, and upon it our conclusion is that defendant had failed to sustain his defense of fraud.

V.     It follows from the conclusions announced that the plaintiff is entitled to judgment against the defendant for the amount of the contracts sued upon, namely, ten thousand dollars, with interest at eight per cent., less the following credits, to which we find the defendant entitled:

| | |
|---|---:|
| March 31, 1891, the sum of | $2,000 00 |
| December 31, 1891, the sum of (sales of lots) | 1,524 66 |
| December 31, 1891, the sum (rent) | 44 11 |
| March 26, 1892, credit above interest | 528 00 |
| December 31, 1892, by sale of lots | 605 76 |
| December 31, 1892, by rent | 10 14 |
| April 1, 1893, the sum of | 529 50 |
| April 1, 1893, the sum of | 470 50 |
| May 3, 1893, the sum of | 1,000 00 |
| May 3, 1893 | 18 90 |
| May 5, 1894, the sum of | 419 64 |
| May 5, 1894, the sum of | 580 36 |

The judgment of the district court is reversed, and the case remanded for judgment in harmony with this opinion, or, at the option of the plaintiff, judgment may be rendered in this court.—Reversed.