No. 18,699.

HENRY ELWOOD, *Appellant,* v. HENRY TIEMAIR et al., *Appellees.*

#### SYLLABUS BY THE COURT.

1. ACTION FOR COMMISSION—*Allegation of Fraud—Failure of Proof.* If a party who alleges fraud and who has the burden of proof on the proposition does not establish it by a preponderance of the evidence the issue must be found against him.

2. CONTRACT—*Executed after Knowledge of Alleged Fraud—Waiver.* If a party who is induced to enter into a contract by misrepresentations of fact gains knowledge of the fraud before the contract is executed, and thereafter deliberately proceeds to perform the contract on his part and to exact

performance of the other party, he will waive the fraud and affirm the voidable contract, and especially is this true where the defrauded party, having full knowledge of the fraud, enters into a new contract recognizing the validity of the first one and in which he promises to do the things that he had promised to do in the original contract.

3. SPECIAL FINDINGS—*Overcome Verdict—Verdict Set Aside—Judgment.* The special findings and undisputed facts in the case examined and held to overcome the general verdict and to require the entry of judgment in favor of appellant.

Appeal from Washington district court; JOHN C. HOGIN, judge. Opinion filed March 7, 1914. Reversed.

*Edgar Bennett,* of Washington, *Park B. Pulsifer,* and *Charles L. Hunt,* both of Concordia, for the appellant.

*F. W. Sturges,* and *F. W. Sturges, jr.,* both of Concordia, *S. H. Hamilton,* of Washington, and *F. L. Williams,* of Clay Center, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action brought by the appellant, Henry Elwood, to recover from the appellees, Henry Tiemair and wife, the commission alleged to be due for the sale of their farm, which consisted of about two hundred and forty acres. On June 30, 1910, Tiemair signed a written contract which purported to authorize Elwood to find a purchaser for his farm at a net price of $9000, Elwood to have all which he received above that price as a commission. It was provided that the purchaser should pay $2000 in cash to bind the bargain, and that Elwood should receive his commission out of the first payment made on the farm. There was no limit as to the continuance of the contract, but Tiemair reserved the right to withdraw the property from sale upon thirty days' notice to Elwood. About September 24, 1910, Elwood procured a purchaser, named Alexander Faidley, who agreed to buy the land at the price of $12,000, of which sum $2000 was to be paid when an abstract of title was approved.

A mortgage of $3800 on the land was to be assumed by Faidley, and the balance was to be paid on March 1, 1911. The agreement of purchase was reduced to writing and signed by Tiemair, Faidley and Elwood. At the same time Tiemair and wife signed a writing to the effect that Elwood was to be paid $3000, the excess of the purchase price over $9000, as commission, and that $1000 of the commission would be paid when an approved abstract and deed were deposited in a certain bank and the remaining $2000 of the commission was to be paid on March 1, 1911. The abstract was made and approved, and the deed was executed to Faidley by Tiemair and wife in accordance with the agreement, and on November 9, 1910, $1000 of the commission earned by Elwood was paid by Tiemair. Although the transfer from Tiemair to Faidley was closed up, Tiemair refused to pay Elwood the remaining $2000 of the commission, and to recover that balance the present action was brought. It is admitted by the Tiemairs that the contract with Elwood was made and that a sale of their farm was effected, and also that $1000 was paid by them to Elwood as commission for procuring a purchaser, but they alleged that the contract was void because it was obtained through the misrepresentations and fraud of Elwood. It was averred that on February 3, 1910, a contract had been made by Tiemair with the Clyde Land Company to procure a purchaser for the land, for a period of sixty days, and that about April 1, 1910, this contract was indefinitely extended by a parol agreement. It was also averred that Elwood had been associated with the Clyde Land Company, and had previously represented to Tiemair that he was acting in that capacity. It was further averred that on June 30, 1910, Elwood represented to Tiemair that the Clyde Land Company had discontinued the real-estate business and abandoned the agency for Tiemair's land, and that, believing the representations to be true, he entered into the contract with Elwood, but it is

Elwood v. Tiemair.

alleged that the representations were in fact false, and were known by Elwood to be false, and that but for these false representations no contract with Elwood would have been signed, and no money would have been paid to him as commission.  It was also alleged that afterwards, in order to complete the contract with Faidley, they abated the price of the land the sum of. $1000 and paid certain commissions to the Clyde Land Company and others, but this defense was held by the trial court to be immaterial to the controversy between the parties, and was stricken from the consideration of the jury.  A trial before a jury resulted in a verdict in favor of the Tiemairs for $1.

Elwood appeals, and contends, first, that no defense was pleaded or proven by Tiemairs, and therefore his motion for judgment on the pleadings and his demurrer to the evidence should have been sustained. The only substantial defense to the action of Elwood was that Tiemair was induced to enter into a contract with Elwood through his fraudulent representations that the Clyde Land Company, which formerly had an agency for the sale of the land, was "busted up" or had gone out of business, and that but for these representations, which were false, the contract would not have been made.  It is contended that these representations were not material, and in any event they did not operate to the prejudice of the Tiemairs.  The representations might be material if the Tiemairs were led to believe that they were under no obligation to others or that the obligation had been terminated, when in fact it had not, and so were led to make a contract with Elwood which would necessarily bring them into conflict or litigation with others having an agency to sell the land.  It is argued that the Tiemairs were not influenced by the representations in case they were made, as Tiemair knew that the sixty-day contract with the Clyde Land Company had expired, and that it was only extended by parol agreement for a single day.

When the rulings on the motion and demurrer of appellant were made the limit of the renewal of the contract with the Clyde Land Company had not been determined. It was a matter of dispute until the jury had found that about April 1, 1910, it was extended for only a day. It can not be said, therefore, that error was committed in overruling these motions.

The principal contention is that judgment should have been rendered in favor of Elwood on the admissions of the Tiemairs and the findings of the jury. That Tiemair signed the writing employing Elwood to procure a purchaser for their farm is not in dispute. There is no controversy that a purchaser was procured on the stipulated conditions or that Tiemair entered into a contract of sale with the purchaser. When this service was performed Elwood had earned the agreed commission unless the contract under which the service was rendered was avoided by fraud, or rather, whether the fraudulent representations were made by Elwood as alleged by Tiemair. Special findings were made by the jury, and to question No. 11, "Did plaintiff about June 30th, 1910, say to defendant Tiemair, in substance, that The Clyde Land Company was busted up and not doing business any more and that he had sued the company?" the jury answered, "Because plaintiff did not produce preponderance of evidence Jury gives benefit of doubt to defendant."

The Tiemairs had alleged fraud, and the burden of proving it by a preponderance of the evidence rested upon them. If they failed to establish fraud by a preponderance of the evidence they failed in their defense, and the court instructed the jury to that effect. The jury evidently misunderstood the instructions of the court. Manifestly, the evidence on the question did not satisfy the minds of the jury, but left them in doubt, and hence they gave the benefit of the doubt to the defendants because the plaintiff had failed in bearing a burden which they mistakenly understood rested

upon him. The finding is equivalent to a finding that the evidence was evenly balanced, and that as there was no preponderance in favor of either party the jury were unable to find the fact of fraud from the evidence, and therefore resort was had to an arbitrary rule of law which they misunderstood and misapplied. But for this misapplied rule the finding of the jury must have been, "We can not determine the question of fraud from the evidence produced." It is well settled that if a party who asserts a fact and has the burden of proof fails to establish it by a preponderance of evidence the issue must be found against him, and hence it must be held that the fraud upon which the defense of appellees rested was not established.

It is said that the answers to questions Nos. 12 and 13 tended to show that an affirmative answer to question No. 11 was intended by the jury. They follow:

"Q. 12. Did defendant believe the statement so made by Elwood to be true? A. Yes.

"Q. 13. Would defendant Tiemair have given to Elwood an agency contract for the sale of the farm if he had not believed the representations to be true? A. No."

These answers, although affirmative in form, must be interpreted in the light of the answer given to the main question, and were doubtless reached upon the same theory, that is, because Elwood failed to prove the affirmative of the question by a preponderance of the evidence. The other findings, and the facts about which there is no dispute, show that in any event this defense of Tiemairs is unavailing. As we have seen, the fact that Tiemair employed Elwood to sell the land is conceded. It is also conceded that Elwood procured a purchaser to whom a sale was made. The jury found that Tiemair received a payment of $2000 from the purchaser under the contract made through Elwood. There is another finding, too, that the Tiemairs closed the sale effected by Elwood under his contract

with them and also that they had delivered the deed conveying the land to the purchaser. While it was found that Tiemair had employed the Clyde Land Company in February, 1910, to find a purchaser for the land, it was also found that the employment was only for a sixty-day period which expired about April 5, 1910, and that Tiemair's agreement to extend that contract was only for a day. The contract relation between Tiemair and the Clyde Land Company had therefore expired long before the contract with Elwood had been made. Under the findings Tiemair was under no obligation to the Clyde Land Company, and whether the company had broken up or had discontinued the real-estate business was immaterial so far as the contract with Elwood was concerned. Even if it were assumed that a misrepresentation as to that fact had been made by Elwood so as to affect the validity of the contract, Tiemair unequivocally recognized the contract as a binding obligation after learning that the Clyde Land Company was still in business claiming the right to sell the land and also that Tiemair was liable to the company for a commission. The jury found that Tiemair was advised by the Clyde Land Company in August, 1910, which was about a month before the sale was made by Elwood, that the company was still claiming to be his agent for the sale of the property. After that time, and on September 24, 1910, Tiemair and wife signed another writing recognizing the agency of Elwood and specifically agreeing to pay the commission that was provided for in the original contract. In a few days after the sale the company notified Tiemair that Elwood had no right to make the sale and if the land was sold it must be done through its agency. The letters and testimony of Tiemair showed that he fully understood the claims made by the company. After being informed that the company was still in business and claiming to have an exclusive agency for the sale of his lands Tiemair

proceeded deliberately to execute the contract made for him by Elwood. The first payment of $2000 was made to and accepted by Tiemair after that time. Long afterwards, and on November 9, 1910, Tiemair, with full knowledge of the fact that the Clyde Land Company was still in the real-estate business and was still insisting that it had a binding contract for the sale of the land, recognized the validity of the contract with Elwood by paying him $1000 of the commission earned under the contract. On the same date Tiemair entered into another contract with Elwood in pursuance of the Elwood agency contract whereby Elwood paid $200 to obtain the cancellation of a lease held by a tenant and a surrender of the possession of the premises sold so that the sale to the purchaser made by Elwood could be carried out. Another circumstance in the case which tends in the same direction is that in December, 1910, a suit was brought by the Clyde Land Company against Tiemair and Elwood to recover a commission on the same sale and Tiemair filed an answer in the case wherein he recognized that a valid contract had been made with Elwood. In it he made no averment of misrepresentations by Elwood, although he was then acquainted with the claims made by the company, but instead he asserted that he understood that Elwood and the company were coöperating in the transaction and that therefore he could safely deal with Elwood. It is well settled that if a party who is induced to enter into a contract by misrepresentations of fact gains full knowledge of the fraud before the contract is executed and thereafter pays installments on the contract, performs the contract on his part and exacts performance of the other party, he will waive the fraud and affirm the contract. (*Bell v. Keepers,* 39 Kan. 105, 17 Pac. 785; *Sell v. Compton,* ante, p. 151, 136 Pac. 927.) Especially is this the case where, as here, the defrauded party, having knowledge of the fraud, enters into a

51—91 KAN.

new contract in which he promises to pay the commission or do the things he agreed to do in the original contract. (*Brown v. Lead & Zinc Mining Co.*, 231 Mo. 166, 132 S. W. 693; *Kingman & Co. v. Stoddard,* 85 Fed. 740, 29 C. C. A. 413; *Simon v. Goodyear Metallic Rubber Shoe Co.,* 105 Fed. 573, 44 C. C. A. 612, 52 L. R. A. 745; *Gilmer v. Ware,* 19 Ala. 252; *Craig v. Bradley,* 26 Mich. 353; *Dorr v. Alford,* 111 Iowa, 278, 82 N. W. 789; *McDonough v. Williams,* 77 Ark. 261, 92 S. W. 783, 8 L. R. A., n. s., 452, and note; 20 Cyc. 92; 14 A. & E. Encycl. of L. 159.)

Tiemairs are unquestionably liable to Elwood for the unpaid portion of the commission unless their defense of alleged fraud can be maintained. Two findings and undisputed facts negative the existence of that defense and necessarily overthrow the general verdict of the jury.

The judgment of the district court will, therefore, be reversed and the cause remanded with directions to enter judgment in favor of Elwood for the amount of his claim.