## S. B. BELL v. JOHN KEEPERS.

1. CONTRACT — *Fraud* — *Rescission, When.* When one party seeks to recover money paid upon a contract, because it was entered into fraudulently, before he is entitled to recover relief he must place the other party to such contract in the same condition, substantially, he was in when it was made.

2. RESCISSION, *Entire, Not Partial.* Where a contract of sale embraces several distinct pieces of property, and one is sold by the purchaser, he cannot rescind that part of the contract relating to the other property and recover what he was paid thereon, without restoring or offering to restore to the other party the full amount of the proceeds of the pieces sold by him.

3. ———— The right to disaffirm a contract for fraud must be exercised promptly after its discovery.

4. FRAUD — *Waiver, When.* If, after the discovery of fraud in a contract, the party imposed upon, without objection, pays several installments upon it, and sells one of the tracts of land embraced therein, he waives the fraud and affirms the contract.

*Error from Wyandotte District Court.*

ACTION by *Keepers* against *Bell,* to recover certain damages. Plaintiff's petition stated five distinct causes of action. Trial at the April term, 1886; the jury returned a general verdict for plaintiff for $391.65 damages — $200 thereof being upon the first cause of action, $150 thereof upon the third cause, and $41.65 thereof on the fourth cause. Judgment accordingly for the plaintiff. The defendant brings the case here. The opinion states the material facts.

*Nathan Cree,* for plaintiff in error.

*J. O. Fife,* and *John A. Hale,* for defendant in error.

Opinion by HOLT, C.: John Keeepers, the defendant in error, brought this action against S. B. Bell, and set forth in his petition five distinct causes of action. A general verdict was rendered in his favor, and special findings for amount of recovery upon the first, third and fourth causes of action. The first cause of action arose from the following facts: In April,

1884, Bell agreed to sell to Keepers three pieces of property, two tracts of real estate, and a barn, which was treated by both parties as personal property. There was a contract entered into in writing, stipulating that Keepers should pay $2,250 for the three pieces of property, in monthly payments of $40 each, until all were paid for. One of the tracts of real estate was purchased by Keepers for the purpose of erecting a canning factory thereon; it was situated in Wyandotte, on the "southwest boulevard." Plaintiff in his petition averred that the defendant fraudulently described the land in pointing out the boundaries at the time of the sale. This tract, facing one hundred feet upon the "boulevard," ran back to a creek; if it was to be used as the location for a canning factory, it would be of great advantage to it to border upon the creek. At the time of the purchase, while this matter was being talked over, the defendant told plaintiff that the tract bordered upon the creek 88 or 90 feet, or that it was not more than ten or twelve feet narrower in the rear than it was in front upon the boulevard. By a survey afterward made, it appeared that the lot touched upon the creek for only fifteen feet. This tract of land, which was called by the defendant at the trial a "gore," was a part of a body of land originally owned by Bell, but which had been divided by the court in an action between Bell and his wife for divorce; it had not been surveyed, and probably the description which Bell gave to Keepers, and the boundaries designated, were given by him without knowing they were erroneous; he did not know where the division line ran, but talked to plaintiff as though he did.

In November, 1884, the other piece of real estate was traded by Keepers to one Marks, and at Keepers's request Bell made Marks a deed. Marks gave a mortgage thereon for $700 to Bell, and paid Keepers $800; that payment was made in saddler's stock, however, and there was some testimony showing that it was put in at more than its market value would have been at wholesale. Keepers paid several monthly installments of $40, the last on the 1st day of January, 1885, and neglected to make any payment thereafter. On the 17th of March

following, Bell sent him notice to leave the premises. Bell abandoned the premises and brought this action. He had in the meantime been making some improvements and renovations on the barn that he bought and occupied as a canning factory. He had paid altogether $200 on the contract. There was a general verdict for the plaintiff, and the only special findings were in apportioning the different amounts upon the several causes of action; upon the first cause of action it was found to be $200 and interest.

Several errors are alleged, only one of which we shall consider, as we believe the determination of that one will practically dispose of the case. The following instruction was asked, and refused:

"If the jury find that on the 27th day of November, 1885, Bell at the request of Keepers conveyed one of the parcels of land described in the contract of April 10, 1884, to one Marks, and that Keepers received a sum of money as the result of said sale, then the court instructs you that Keepers could not repudiate and rescind the said contract of sale and retain the money so received, but was bound to return the same to Bell upon any rescission of the contract."

This instruction, or one similar to it, ought to have been given. The proof shows that the three pieces of property were embraced in one sale, and it further appears that it has not been rescinded by mutual agreement; if plaintiff desired to rescind, he should have placed defendant on the same footing, so far as he was able, as he was at the time of the sale. He should not be permitted to retain that portion of the property, or the proceeds thereof, which had been profitable and advantageous to him, and turn back another portion of the property that he might not be satisfied with. The $200 paid on the contract of April, 1884, was not paid upon the property called the "gore" alone, but was paid upon the entire property named in the contract, and before he would have the right to recover the money so paid he must first offer to place Bell in the same condition in which he was when the trade was made. There are other errors of the court similar to the one pointed out here, but we do not care to specifically

notice them.  This error committed by the court in this instruction, permeated the entire trial.  The plaintiff ought to have done, or offered to do, what would have placed defendant substantially in the same condition he was in at the time the contract of sale was made, before attempting to recover the money paid upon the contract.  (*Harvey v. Morris*, 63 Mo. 475; *McIndoe v. Morman*, 26 Wis. 588; *Underwood v. West*, 52 Ill. 397; *Melton v. Smith*, 65 Mo. 315.)

As this action will be remanded for a retrial, there is another phase of the case that requires a suggestion.  The evidence of the plaintiff himself shows that he discovered shortly after the contract was made, that the defendant had misled him in the description of the tract fronting upon the boulevard.  After such knowledge he paid several installments upon the contract, and also effected the sale of the other tract embraced therein to Marks.  When he found out that the defendant had deceived him in the description of a part of the land, he should have at once rescinded or offered to rescind the contract, and reconveyed or offered to reconvey his interest in all the property he had acquired thereunder.  He cannot be permitted to select his own time and consult his own convenience before exercising the right of rescission.  That would give him the power to retain the property, and after waiting, if markets should prove favorable, he could thus secure possible benefits, and on the other hand have time to reconvey if it should decrease in value, and thus escape all disadvantages.  The law does not allow anyone to play fast and loose in such a manner.  (*Estes v. Reynolds*, 75 Mo. 563; *Melton v. Smith*, 65 id. 315.)

The third cause of action was founded upon a contract between plaintiff and defendant, whereby plaintiff was to do some grading upon the southwest boulevard in front of defendant's property.  The contract was an oral one, and the parties differ materially in reference to its terms, and the jury were justified in rendering a verdict in favor of plaintiff if they believed that his statement of the contract was correct; and although certain legal questions are raised in the brief in regard to this cause of action, it must be determined in favor

of the defendant in error, upon the ground that there was sufficient evidence to sustain the verdict of the jury, and that the court rendered judgment thereon.

The fifth cause of action was concerning the rent of a certain tract of land leased by defendant to plaintiff for garden purposes. Defendant claims that the rent was to be $200 for a certain tract, or $10 an acre, and that the amount agreed upon in that tract was twenty acres. The plaintiff claims that the rent was to be at the rate of $10 an acre per annum, but that the amount of the land was to be determined by survey, being all the ground that could be cultivated in said tract. It appears that plaintiff paid more rent than it would have amounted to at $10 per acre, and the action was to recover the amount above what the rent really was. In this cause of action there was also a conflict of testimony, and the jury found in favor of the plaintiff, and judgment was rendered thereon. Under the well-established practice in this state, we shall hold that it was correct.

We therefore recommend that this judgment be modified; that the judgment rendered on the first cause of action be reversed, and the cause remanded for retrial thereon, and the judgment upon the third and fourth causes of action be affirmed.

By the Court: It is so ordered.

All the Justices concurring.