[No. 2486. Decided May 5, 1898.]

JOHN H. THOMAS, *Appellant*, v. HENRY McCUE *et ux.*, *Respondents*.

RESCISSION OF CONTRACT — LACHES.

Where one party to a contract intends to rescind it on account of a breach of it by the other, he must elect to do so speedily on the discovery of the breach; for delay is evidence of a waiver of the misconduct of the other party and is itself deemed an election to treat the contract as valid and binding.

Appeal from Superior Court, Whatcom County.—Hon. JOHN R. WINN, Judge. Affirmed.

*J. W. Rayburn* (*T. L. Stiles*, of counsel), for appellant.
*S. M. Bruce*, and *O. P. Brown*, for respondents.

The opinion of the court was delivered by

ANDERS, J.—On February 1, 1890, the respondents and the appellant entered into a contract in writing wherein and whereby the former covenanted to sell, and the latter to purchase, a certain tract of land in the county of Whatcom and state of Washington, described as lots Nos. 4 and 5, and the west half of the southwest quarter of section 27, Tp. No. 38, N. of range No. 3 east, containing 159.50 acres. The appellant agreed to pay for the same in the following manner: $2,000 in cash to be paid on or before thirty days from date; $9,472.18 on or before one year from the date of said first payment, and $9,472.18 on or before two years from the date of said first payment, together with interest thereon at 8 per cent. per annum from date. The appellant was by the contract constituted an attorney in fact of the respondents to dedicate to the public any plat that he or his assigns might lay on the land at his own expense, the manner of such platting being left to the judgment of appellant. The respondents reserved the right to retain one-eighth of the number of lots laid out in each block with a proportionate number of corner lots, and, as a part of said one-eighth, they also reserved the right to 100 feet square at the mineral springs on said land, to be selected so as not to interfere with streets laid out, if possible. It was also provided that the appellant should, at any time after the payment of said $2,000, have a right to a deed to any block that was not on the water front and not reserved by the respondents, on paying therefor at the rate of $300 per acre, and that appellant might deduct from the last payment the amount then due to the Guarantee Loan and Trust Company on a mortgage then on said premises. Respondents also reserved the privilege of occupying the house and meadow for themselves, if they so

desired, for a period of one year from the date of the contract. The appellant was also to pay all taxes or assessments thereafter levied or imposed upon the premises. In regard to performance and payments the contract contained these provisions:

"Whereas it is the intention of the parties hereto and they hereby covenant and agree that the times mentioned for the performance or the payment of the said sums and interest thereon, as specified, is essential herein, and that no estimate can be made of the damage which would accrue to said obligors by default in the performance thereof, at the stated times, and whereas it is hereby mutually covenanted and agreed, in consideration of the premises, that default, either in the payments, the whole or any part of said unpaid purchase money, with interest thereon promptly, according to the time above mentioned, or default in the payment of the taxes or assessments aforesaid at their maturity, shall in and of itself, without notice and without proceeding in any Court work a forfeiture of all money paid and of all rights of the property or possession, of, in, or to said premises, or any part thereof, or improvements thereon at law or in equity. Now therefore if said John H. Thomas or his assigns shall pay each and all of said payments, with interest thereon at maturity, and shall in the meantime pay all taxes on said premises; and the said Henry McCue shall, on the completion of said payments, make, execute and deliver or cause to be made, executed and delivered, a good and sufficient warranty deed to the said John H. Thomas, or his assigns for said property, or for said block or blocks, as above set forth, then this obligation to be void, otherwise to remain in full force and virtue,"

the agreement being in the form of a bond on the part of the respondents. This contract was recorded in the office of the county auditor of Whatcom county on the day of its execution. Within a very short time thereafter, Cannon and Steele instituted an action in the superior court of

Whatcom county to obtain a decree declaring them to be the real owners of the contract and appellant their trustee. This action, it appears, was not brought to trial, and was dismissed on March 21, 1891. After the commencement of this action and on May 29, 1890, the respondents brought an action against the appellant to have the contract rescinded and declared a cloud upon their title, and then removed, on the ground that the appellant had, by fraudulent misrepresentations as to certain facts, overreached them in the contract. A *lis pendens* was filed in the case by the plaintiffs. This action was continued from time to time and was finally dismissed and the costs paid by the respondents on January 4, 1893. Prior to that time and on March 25, 1892, the respondents sold and conveyed to the Bellingham Bay & Eastern R. R. Co. a right of way over a portion of lot five, consisting of about three acres. On April 12, 1893, the respondents instituted another action against the appellant for the purpose of obtaining a judgment for the amount of the last installment of the purchase price and interest and asked that such judgment be made a lien on the appellant's interest in the land mentioned in the contract; and on the 4th of May following judgment was rendered against the appellant by default for the amount found due; execution was subsequently issued thereon and the land sold by the sheriff and bid in by the respondent, Henry McCue, for the amount of the judgment and costs, and said judgment was thereupon satisfied of record. On February 28, 1890, appellant paid the first installment of the purchase price, being $2,000, by depositing the same in the Bellingham Bay National Bank of Sehome in accordance with the terms of the contract, and on December 28th of the same year he paid the taxes then due on the land. On March 3, 1891, he deposited the amount of the second install-

ment in said bank to the credit of Henry McCue. He did not at any time plat the land into lots and blocks, nor did he pay, or offer to pay, the balance of the purchase price due February 28, 1892; but he paid the taxes due on the land in the years 1893 and 1894. Nothing further was done by appellant in relation to the contract until January 29, 1896, at which time he delivered to the respondent, Henry McCue, a quitclaim deed to the land, on condition, as he alleges in his complaint, that the latter would repay to him the amount of the purchase money and taxes paid under the contract, together with interest thereon to date. At the same time he demanded of McCue the payment of $18,000 as damages. These demands were not complied with and appellant on the following day commenced this action, the purposes of which were, as stated in his brief, (1) to rescind the contract between himself and the respondents, and incidentally to vacate the judgment against him of May 4, 1893, (2) to foreclose a vendee's lien and (3) to recover the sum of $25,000 damages for the violation of the written agreement. He set up in his complaint that the respondent, Henry McCue, with intent to cheat, defraud and swindle the plaintiff represented to him that the land above described and every part thereof was free from all incumbrances of whatsoever kind or nature except a mortgage held by the Guarantee Loan and Trust Company, which representation the plaintiff believed to be true, and relied upon the same; and that at the time of the making of said contract, as the said McCue well knew, the land was subject to an easement granted to the Bellingham Bay Water Company by a deed executed on April 3, 1889. The complaint further stated the facts already mentioned and also that the plaintiff was prevented from further executing the contract by the commencement of the actions against him by the defendants,

and the withholding from him of the possession of the land. A demurrer was interposed to the complaint upon several grounds, among which was that it failed to state facts sufficient to constitute a cause of action. This demurrer was overruled by the court and the defendants answered by denying certain portions of the complaint and pleading affirmative defenses. The new matter in the answer was denied in plaintiff's reply and upon the issues joined the cause proceeded to trial by the court without a jury, resulting in a judgment for the defendants, dismissing the complaint at the cost of the plaintiff, and the latter has brought the case to this court for review on appeal. Counsel for the respondents insist here, as they did in the court below, that the complaint fails to state facts sufficient to constitute a cause of action, and it must be conceded that this contention is not without considerable force. The principal trouble with the complaint is that the pleader undertook to make it too general and comprehensive. If it was intended to bring an action for the recovery of the money paid under the contract, he cannot recover unless it appears from the whole case that he is entitled to a rescission of the contract. _Distler v. Dabney_, 7 Wash. 431 (35 Pac. 138, 1119). If it was intended to state a cause for rescinding the contract, then it is at least questionable whether he should not have shown an offer or willingness to perform upon his part. We think, if the complaint states a cause of action at all, it is one for a rescission of the contract in question. And, conceding that the facts stated are sufficient to entitle him to a rescission, the question still remains whether, under the proofs and pleadings, he was entitled to the relief at the time the action was commenced. And we are of the opinion that this question must be answered in the negative. Rescission is a remedy which is not to be invoked as a matter of course or of absolute right, but,

like specific performance, its exercise rests in the sound discretion of the court. 2 Warvelle, Vendors, p. 833. A court of equity in rescinding a contract proceeds upon the assumption that it can result in no injustice to place both parties in the position in which they were prior to the making of the contract; and this can only be fairly done, in cases of contracts in relation to land whose value is largely speculative and subject to sudden changes, soon after the contract is entered into. Before a party can justly claim a rescission he must not only show that the opposite party is derelict, but that he himself is without fault, for the law permits no one to take advantage of his own wrong to terminate a contract whch he has knowingly and voluntarily made. There is another principle adopted by the courts and which is often a controlling one in cases like the present, and that is, that, where one party to a contract intends to rescind it on account of a breach of it by the other, he must elect to do so speedily on the discovery of such breach. Delay in rescission is evidence of a waiver of the misconduct of the other party and is itself deemed an election to treat the contract as valid and binding. *Hogan v. Kyle,* 7 Wash. 595 (35 Pac. 399, 38 Am. St. Rep. 910); *Scheftel v. Hays,* 58 Fed. 457; *Rugan v. Sabin,* 53 Fed. 415; *McLean v. Clapp,* 141 U. S. 429 (12 Sup. Ct. 29); *Grymes v. Sanders,* 93 U. S. 55; *Hayward v. Bank,* 96 U. S. 611. The rule deduced from the authorities in relation to rescission is well stated in 2 Warvelle on Vendors, at page 836, as follows:

" Where a party intends to abandon or rescind a contract on the ground of a violation of it by the other, he must do so promptly and decidedly on the first information of such breach. If, with full knowledge or with sufficient notice or means of knowledge of his rights and of all the material facts, he lies by for a considerable time, or abstains from impeaching the transaction, so that the

other party is induced to suppose that it is recognized, this will be an acquiescence, and the transaction, although originally impeachable, ceases to become so in equity."

In *Hayward v. Bank, supra*, the court said:

" The question of acquiescence or delay may often be controlled by the nature of the property which is the subject of litigation. ' A delay which might have been of no consequence in an ordinary case, may be amply sufficient to bar relief when the property is of a speculative character, or is subject to contingencies, or where the rights and liabilities of others have been in the meantime varied. If the property is of a speculative or precarious nature, it is the duty of a man complaining of fraud to put forward his complaint at the earliest possible time. He cannot be allowed to remain passive, prepared to affirm the transaction if the concern should prosper, or to repudiate it if that should prove to his advantage.' "

Applying these principles to the case before us, it would seem manifestly unjust to the respondents to permit the appellant to rescind his contract and recover the amount paid thereon. The appellant contends, however, that he is absolved from all obligations under the contract for the reason that the respondents have incapacitated themselves either to convey the land free from incumbrances or to convey the whole amount bargained for. He insists that he is under no obligation either to accept incumbered property or a less amount of land than that specified in the contract. But, conceding that he would have had sufficient ground for asking for a rescission when he discovered that the land was subject to the right of way to the water company, it was his duty, under the authorities which we have cited, to avail himself of his option at that time. And the same remarks are equally applicable to the objection that the respondents are unable to convey all the land they agreed to convey by their contract. The proof

shows that at the time this contract was made the premises in controversy were worth some $200 or $225 per acre, that in April, 1892, the time  when the conveyance of the right of way was made to the railroad company, it was worth only about $50 less.  In October, when appellant says he first became aware of this conveyance it was worth $50 per acre, but at the time of the commencement of this action it was worth not to exceed $25 per acre and not in demand at that.  If appellant had asserted his rights when he became aware of the grievances of which he now complains, there would have been an opportunity for the respondents to have sold the land to other parties and repaid the purchase money without material loss.  But at the present time that would be impossible and a rescission would entail upon the respondents the loss of many thousands of dollars occasioned by the indecision and inaction of the appellant.  The appellant himself testified at the trial that he did not make up his mind to rescind his contract until about a week before he tendered the quit claim deed to McCue on January 29, 1896. It was then too late to rescind, or treat as rescinded, the contract which his long silence had ratified.

We have carefully examined all of the appellant's assignments of error and have spared no labor in endeavoring to arrive at a just decision as to the rights of the respective parties to this unfortunate transaction, and we have been forced to the conclusion that the judgment of the court below was right, and it is therefore affirmed.

GORDON, DUNBAR and REAVIS, JJ., concur.