THE PROVIDENT LOAN TRUST COMPANY v. GORDON McINTOSH *et al.*

No. 13,468. (75 Pac. 498.)

SYLLABUS BY THE COURT.

1. FRAUD—*Conditions Precedent to Relief.* Relief on the ground of fraud will not be granted to one who does not seek it promptly after discovery of the fraud, and who, with knowledge of the fraud, retains the fruits of the transaction it induced.

2. ———— *False Representations.* Relief will not be granted on account of false representations not shown to have been relied on as an inducement to conduct resulting in injury.

3. CONVEYANCE—*Contract of Sale Without Disclosing Title.* A man having an interest in land, and having such control of its title that he may require a conveyance of it, may rightfully make a contract in his own name to convey it by a warranty deed, without disclosing the actual state of the title to the purchaser.

4. ———— *Recovery of Consideration Without Rescission.* Money paid upon a contract induced by fraud cannot be recovered unless the contract may be rescinded; and a rescission will not be decreed to one who was himself in default at the time of the dereliction of which he complains.

5. NEW TRIAL—*Not Granted Because Theories Presented Were Inconsistent.* A party accepting all the issues tendered by the petition, and defending the case at the trial against all the theories presented, will not be granted a new trial because such theories are inconsistent with one another.

Error from Geary district court; O. L. Moore, judge.   Opinion filed February 6, 1904.   Affirmed in part and reversed in part.

*Humphrey & Humphrey*, for plaintiff in error.

*Taylor & Brown*, and *Roark & Roark*, for defendants in error.

The opinion of the court was delivered by

Burch, J. : The plaintiffs brought an action to recover from the defendant, the Provident Loan Trust Company, money they had paid to it under a contract for the purchase of real estate.   They founded their action upon fraud in the formation of the contract and subsequent acts of the defendant, whereby it voluntarily deprived itself of the power to convey to them the land.   The defense was that the contract was free from fraud in its inception, and that the defendant was ready, able and willing to perform, but that the plaintiffs were in default; and the answer alleged that if plaintiffs ever had any cause of action it was barred by the statute of limitations.   The plaintiffs prayed for damages, while the defendant prayed for the balance due upon the contract, and for a decree of forfeiture if it should not be performed within a time to be fixed by the court.   Upon the trial, the court, upon request, made findings of fact and conclusions of law, and rendered judgment for the plaintiffs.   The defendant prosecutes error in this court.

Such of the findings of the court as are necessary to a decision of the case, briefly summarized, disclose the following facts :   Prior to 1893 Henrietta M. Shaw, of Cooperstown, N. Y., held a mortgage on the land in controversy, which was foreclosed and the property bid in by the defendant.   In November, 1893, the de-

fendant conveyed the land to Henrietta M. Shaw by warranty deed, but took from her a contract whereby the company took charge of the land for a year, to rent if possible, and to sell as soon as might be, and apply the proceeds to the payment of taxes and insurance and the principal and interest of Henrietta M. Shaw's mortgage debt, any surplus to be retained by the defendant in payment of what was termed its equity and services. This contract was not recorded, and plaintiffs had no knowledge of it until it was pleaded. On August 16, 1894, the plaintiffs purchased the land, paying part of the purchase-money in cash and agreeing to pay the balance in instalments, and executed the contract in suit as evidence of the terms and conditions of sale. The only reference to the ownership of the land or the source or character of title to be conveyed which the contract contained was in these words :

"Said party of the first part hereby agrees to sell, and by warranty deed to convey, to the said parties of the second part, the following described property, to wit."

By the language of the contract, time was made of the essence of its terms, and forfeiture was made the penalty for a default.

After the execution of the contract plaintiffs placed the land in the hands of the defendant to rent, and the land was rented for three years, beginning September, 1894, at an average rental of $150 per annum, which rents were credited on the plaintiffs' account for the purchase of the land and used for the payment of taxes. During these three years plaintiffs made additional payments on the contract from their own funds, amounting altogether to $341. In a letter of January 21, 1897, the defendant rendered a statement and

made a report of the rents for the year 1896.   On February 7, 1898, an agent of the plaintiffs wrote the president of the defendant company a letter, containing the following language :

"Your favor of the 26th ult. duly received.   You speak of rent of McIntosh farm for 1897, $110.   Mr. McIntosh understood the farm was rented at same price as for the year 1896, viz., $150.   In the year, $100 was paid cash and $50 allowed for a well.   .   .   . In your letter of January 27, 1897 ( to Daniel Evans), you say, 'We certainly do not want Mr. McIntosh to lose on this investment,' etc., and you say this in connection with the $400 proposition.   Now, as but a year has elapsed, during which time you have had the $110 rent to apply on the interest and taxes, and you double the amount now exacted to $800, I think you have made a mistake or else you are ready to see Mr. McIntosh lose on the investment.   Will you please advise me, and oblige."

On February 2, 1897, an agent of the plaintiffs wrote the president of the defendant company acknowledging that there was then due defendant on the contract and growing out of it $329.29, and suggesting a compromise plan for carrying out the contract as to a part of the land. Portions of the letter of February 7, 1898, confessed inability to carry out the contract and offered a plan whereby the plaintiffs might obtain title to eighty acres of the land.

In March, 1898, the defendant made a settlement with Henrietta M. Shaw, releasing any claim it had upon the land in controversy.   On March 12, 1898, Henrietta M. Shaw conveyed the land by warranty deed to George C. Eaton, which deed was recorded March 5, 1899.   Before the commencement of suit one eighty acres of the land had been conveyed by Eaton to Henry Lichtenhan, and the other eighty acres of it

to Alice M. Nickells, who had mortgaged her portion for $500.    Suit was commenced June 25, 1900.

Plaintiffs purchased the land after a representation by an officer of the defendant company that the rental value of the land was $500 per year.    This representation was false and was known to be so by the party making it.    Plaintiffs were ignorant of its falsity, relied on its truthfulness, and were induced by it to make the purchase.

Concerning the allegations respecting the state of the title to the land the court found as follows :

"At the time he made the contract McIntosh believed that the land he was buying was the property of the Provident Loan Trust Company, and at all times prior to February 25, 1898, he still believed the property was the property of the Provident Loan Trust Company.

"From the terms and averments and covenants of the contract, the plaintiff had reason to and did believe that at the time of the execution of the contract the Provident Loan Trust Company was the owner of the legal and equitable title to the land in controversy."

Following the last statement is another, which, however, is a conclusion of law and not a finding of fact. It reads :

"And the failure of the officers and agents of said company to reveal the name of the party who was to hold the legal title to the land in trust for plaintiffs, until plaintiffs should pay the balance of the purchase-price, was a fraud upon the plaintiffs which would avoid the contract, when discovered by the plaintiffs."

In conclusion, the court said :

"The plaintiffs learned of the fraudulent representations as to the rental value of the land more than two years before the commencing of the action, and their action to rescind the contract upon that ground is barred by the statute of limitations.

"I have therefore reached the conclusion in this case that the plaintiffs are entitled to recover the purchase-money which they paid upon this contract from the Provident Loan Trust Company, because of the fraudulent representations and concealments in relation to the title to the land, and because, at the time of the commencement of this action, the defendant, the Provident Loan Trust Company, had voluntarily placed it beyond its power to perform the conditions of the contract by making a conveyance of the same to the plaintiffs."

Since the defendant was a non-resident corporation, it could not make the defense of the statute of limitations. (*Williams v. Railway Co.*, ante, p. 17, 74 Pac. 600.) Therefore, the refusal of the court to grant relief to the plaintiffs on that ground was erroneous. But the error cannot redound to the advantage of the plaintiffs, since the findings of fact affirmatively show that the plaintiffs were altogether without the pale of equity when assailing the contract on account of misrepresentations concerning the rental value of the land. Since the average rental of the land for 1894, 1895 and 1896 was but $150 per annum, the total amount received for the three years could not equal the represented income for one year. Therefore, whenever plaintiffs received their first year's rent, they knew that the representations had failed. If they were aggrieved by the fraud, they should have made a prompt disavowal of any obligation incurred on account of it. Instead of this, they chose to keep the land and to appropriate the rents from it, year after year, to the reduction of their debt. Meanwhile they were making payments out of their own resources upon the same debt in order to hold the possession of the very land which was rendering such insignificant returns.

On February 7, 1898, three and one-half years after making the contract, information that the rent for 1897 was only $110 did nothing more than bring out a mild protest that the plaintiffs understood the rent to be $150, as it had been for the year 1896. No intimation of a repudiation even then escaped, and suit was not commenced until almost two and a half more slothful years had worn away. The plaintiffs, therefore, by their own conduct erected a double barrier between themselves and any relief in a court of conscience — an attempt to make a profit from the transaction by clinging to its fruits after full knowledge of the fraud and an insufferable delay.

"The law does not permit a party to rescind a contract on the ground of fraud under all circumstances, but imposes certain well-defined limitations on the right of rescission.

"In the first place, a contract cannot be rescinded for fraud after it has once been affirmed, expressly or impliedly, with a full knowledge of the fraud. The party has a right to rescind, but he is not bound to do so, and when he has once made his election he is bound by it.

"A contract may be affirmed either expressly or impliedly. It is impliedly affirmed, so as to bar a subsequent rescission, if it is acted upon by the party defrauded, after discovery of the fraud, by accepting money, property or other benefits under it, or otherwise unequivocally recognizing it as binding.   .   .   .

"It is also a well-settled principle that, to entitle one to rescind a contract for fraud, he must exercise his option within a reasonable time after the discovery of the fraud. If he delays rescission for an unreasonable time, he will be held to have affirmed the contract, and cannot afterwards rescind." (14 A. & E. Encycl. of L., 2d ed., 159, 161, and authorities cited.)

"The evidence of the plaintiff himself shows that he discovered shortly after the contract was made that the defendant had misled him in the description of

the tract fronting upon the boulevard.   After such knowledge he paid several instalments upon the contract, and also effected the sale of the other tract embraced therein to Marks.   When he found out that the defendant had deceived him in the description of a part of the land he should have at once rescinded or offered to rescind the contract, and reconveyed or offered to reconvey his interest in all the property he had acquired thereunder.   He cannot be permitted to select his own time and consult his own convenience before exercising the right of rescission.   That would give him the power to retain the property, and after waiting, if markets should prove favorable, he could thus secure possible benefits, and on the other hand have time to reconvey if it should decrease in value, and thus escape all disadvantages.   The law does not allow any one to play fast and loose in such a manner. (*Estes v. Reynolds*, 75 Mo. 563; *Melton v. Smith*, 65 id. 315.)"   (*Bell v. Keepers*, 39 Kan. 105, 108, 17 Pac. 785.)

Included within one of the assignments of error is the charge that the decision rendered is contrary to law; and that part of the decision granting relief because of fraudulent representations and concealments in relation to the title to the land is assailed on the ground that it does not appear that the representations charged in any way operated to the injury of plaintiffs or violated any confidence reposed on the faith of them.

"A rescission of the contract for the purchase of land and the cancelation of the conveyances, on the ground that the representations of the vendor were false and fraudulent, is an extraordinary power of equity, and should not be exercised unless it is clearly established that the representations were false or fraudulent, and that they were relied on by the purchaser; and the right to disaffirm the contract must be exercised promptly after the discovery of the fraud." (*Wood v. Staudenmayer*, 56 Kan. 399, 43 Pac. 760.)

Likewise, in *White, Adm'x, v. Smith*, 39 Kan. 752, 18 Pac. 931, it was said:

"To sustain a judgment for damages for fraud and deceit in the sale of a newspaper, upon the ground that its subscription list was not as large as represented, it must be alleged, and also shown, that the purchaser relied on the representation of the number of paying subscribers as an inducement to the purchase."

In the American and English Encyclopedia of Law, second edition, volume 14, page 106, many cases are collated in support of the following text:

"General rule that representations must be relied upon.—To entitle a person to relief or redress because of a false representation, it is well settled that it is not enough to show merely that it was material, that it was known to be false, and that it was made with intent to deceive, but it must also be shown that it actually did mislead and deceive; or, in other words, that it was relied upon by the party complaining. This is true whether the false representation be made the ground for an action of deceit or ground for rescission of a contract; and it is true in equity as well as at law."

"Where plaintiff seeks to recover because of the fraud of the defendants based upon misrepresentations, it is incumbent upon him to allege and prove what misrepresentations were made; that they were false; that he believed them to be true; and that he relied and acted upon them." (*Grentner v. Fehrenschield*, 64 Kan. 764, 68 Pac. 619.)

Applying this law to the findings of fact, it is evident that the judgment rendered cannot be sustained upon the ground under consideration. The findings of fact are barren of any suggestion that the plaintiffs relied upon the representations of the defendant that title was in it and not in some one else as

an inducement to buy.   True, it is found that they believed the title to be in the defendant, but that is not sufficient.   If it was in fact immaterial to plaintiffs who held the title at the time, and if they would have bought the land as readily if they had been apprised of the facts, they were not defrauded, and without a finding excluding such an attitude on the part of plaintiffs toward the trade, the presumption of good faith attending every transaction until it is proved to be vicious is not overcome.

The fact that the court made an express finding relating to this element of fraud with respect to the rental value of the land renders its omission here especially striking.

Conceding, however, that within the statement that failure to reveal the name of the party holding title to the land was a fraud the court intended to include all the essential elements of fraud when committed by false representations, the judgment cannot be sustained.   A man having an interest in land and having control of the title so that he may require a conveyance of it at will may make a contract in his own name to convey it by a warranty deed without disclosing the actual state of the title and not be guilty of any fraud upon the purchaser.   The defendant occupied such a position with reference to the land in controversy when it made the contract in question.   The contract no more contained an implied covenant that the defendant then held the title to the land than it contained an implied covenant that the plaintiffs then held title to all the money they were to pay for it. There is no finding of any effort or intention to deceive or to conceal, or any bad faith of any kind beyond the fact that defendant propounded the contract in silence.   This does not amount to fraud.

"It is not necessary, however, that the vendor should be the absolute owner of the property at the time he enters into the agreement of sale. An equitable estate in land, or a right to become the owner of the land, is as much the subject of sale as is the land itself, and whenever one is so situated with reference to a tract of land that he can acquire the title thereto, either by the voluntary act of the parties holding the title, or by proceedings at law or in equity, he is in a position to make a valid agreement for the sale thereof. As was said by Mr. Justice Paterson, in *Burks v. Davies*, 85 Cal. 114, 24 Pac. 613, 20 Am. St. Rep. 213 : 'If, though he be not the absolute owner, it is in his power, by the ordinary course of law or equity, to make himself such owner, he will be permitted within a reasonable time to do so.' If the agreement is made by him in good faith, and he has at the time such an interest in the land, or is so situated with reference thereto, that he can carry into effect the agreement on his part at the time when he has agreed so to do, it will be upheld. (1 Chitty on Con., 11th Am. ed., 431; *Dresel v. Jordan*, 104 Mass. 407; *Townshend v. Goodfellow*, 40 Minn. 312, 41 N. W. 1056, 3 L. R. A. 739, 12 Am. St. Rep. 736; *Smith v. Cansler*, 83 Ky. 371; *Gaither v. O'Dougherty*, 12 S. W. Rep. 306; *Tapp v. Nock*, 12 S. W. Rep. 713; *Ley v. Huber*, 3 Watts, 367; *Tiernan v. Roland*, 15 Pa. St. 429.) We cannot lose sight of the proposition that in this country, where values of land fluctuate rapidly, and where transfers are so frequent, it is very common for the purchaser of land to make a transfer before he has acquired the title. It would work great injustice to hold that no one could make a valid contract for the sale of land until he has himself become clothed with the absolute title." . . .

"It has been held that when the vendor has no interest whatever in the lands which he agrees to convey, and his contract of sale is the mere speculation of a volunteer, courts will refuse to enforce the contract at his instance, and will rescind the agreement at the instance of the vendee, upon the ground that the contract was not made in good faith. The cor-

rectness of this rule in its application to a case
wherein there is no charge of bad faith has, however,
been seriously questioned, and was distinctly repu-
diated in *Dresel v. Jordan*, 104 Mass. 407.'' (*Easton
v. Montgomery*, 90 Cal. 307, 315, 27 Pac. 280, 25 Am.
St. Rep. 123.)

The only remaining support of the judgment of the
district court is that the defendant voluntarily de-
prived itself of the power to convey the land to plain-
tiffs.

The defendant contends that the theory sustaining
a right to relief upon this ground is necessarily incon-
sistent with those already considered.   This is true.
Under one hypothesis the contract was fraudulent,
and therefore without engaging quality from the be-
ginning.   Under the other hypothesis the contract
was a valid one and should be carried out, except that
the defendant has rendered further performance on
the part of the plaintiffs futile.   But the defendant is
in no position to complain.   The two issues were
tendered in the petition.   Instead of challenging the
confusion of theories at the outset, the defendant
chose to meet its adversary at all points and combat
both positions.   Having exposed itself to assaults both
in its front and in its rear, it must now endure with
fortitude.

The conclusion of law last referred to is evidently
drawn from the finding that in March, 1898, the de-
fendant settled with Henrietta M. Shaw and released
all claims to the land in controversy.   At that time,
however, the plaintiffs were more than a year in de-
fault, and since then they have never been in a posi-
tion to demand a conveyance.   Without this they have
no standing to impeach the defendant's conduct.

''If it was intended to bring an action for the re-
covery of the money paid under the contract, he cannot

recover unless it appears from the whole case that he is entitled to a rescission of the contract. . . . Rescission is a remedy which is not to be invoked as a matter of course or of absolute right, but, like specific performance, its exercise rests in the sound discretion of the court. . . . Before a party can justly claim a rescission he must not only show that the opposite party is derelict, but that he himself is without fault, for the law permits no one to take advantage of his own wrong to terminate a contract which he has knowingly and voluntarily made." (*Thomas v. McCue*, 19 Wash. 287, 292, 53 Pac. 161.)

"One who pays money on a contract cannot recover the same unless he is entitled to a rescission of the contract.

"The rescission of a contract is a remedy to be applied in the sound discretion of the court, and only he is entitled to it who can show that he is without fault, and that the other party is derelict." (*Thomas v. McCue*, 19 Wash. 287, 53 Pac. 161.)

"It is obvious that the right to rescind a contract belongs only to the party who is himself without default. Even if he has sufficient grounds for rescission, if he has done some act which hinders performance by the other party, or has failed in any way to perform his own part of the contract, his right to rescind is forfeited." (24 A. & E. Encycl. of L., 2d ed., 647.)

The president of the Provident Loan Trust Company was made a defendant to the action in his individual capacity and jointly charged with the fraud alleged. The court found that he made no representations except that he wrote the contract and executed it as president of the company and rendered judgment in his favor. The plaintiffs, by cross-petition, assign error upon this ruling. In view of the foregoing considerations, this part of the judgment was correct.

The judgment of the district court in favor of the

defendant Pierce is affirmed.   The judgment in favor
of the plaintiffs is reversed, and the district court is
directed to enter judgment in favor of the Provident
Loan Trust Company upon the findings of fact.

All the Justices concurring.