No. 18,526.

A. K. SELL et al., *Appellees,* v. I. N. COMPTON, *Appellant.*

SYLLABUS BY THE COURT.

1. CONTRACT—*Land Exchanged for Merchandise—Failure to Rescind Promptly on Discovery of Fraud—Waiver of Right to Rescind.* A man who trades his farm for a stock of merchandise and fixtures, gives a deed to the farm, a note for the difference in price between the farm and the goods, and agrees to pay a percentage of the proceeds of the sales of the goods on the note, has no standing in equity to ask for cancellation of the deed and note on the ground that the goods were fraudulently misrepresented unless he disaffirm promptly on discovery of the fraud and restore, or is able to restore, the other party to the trade substantially to his original status.

2. ———— *Same.* If, after knowledge of the fraud, the purchaser of the goods continue to sell them in regular course of retail trade, conduct a ten-day special sale, otherwise dispose of considerable quantities of the goods, make payments on the note, and submit to a foreclosure of a chattel mortgage given to secure the note, all without any expression of dissatisfaction, the contract is affirmed in fact and in law, and his only remedy is by an action for damages.

Appeal from Wilson district court; JAMES W. FINLEY, judge. Opinion filed December 6, 1913. Reversed.

*A. E. Crane, E. D. Woodburn, F. T. Woodburn,* all of Holton, and *E. D. Mikesell,* of Fredonia, for the appellant.

*J. T. Cooper,* and *P. C. Young,* both of Fredonia, for the appellees.

The opinion of the court was delivered by

BURCH, J.: Sell traded his farm to Compton for a stock of goods. The goods were priced higher than the farm, and Sell gave Compton a note secured by a chattel mortgage on the goods for the difference. The goods were in a store conducted by Compton at Lehigh. Sell undertook to continue the business, and contracted to keep an accurate account of the goods sold and to deposit sixty-five per cent of the proceeds in the bank at Lehigh, to be credited on the note until it should be paid. Sell took possession of the store on January 29, 1912, and continued in possession until March 20, 1912, when Compton took possession under the chattel mortgage and proceeded to foreclose it. Afterwards Sell brought an action to set aside the deed of the farm, alleging that it had been procured through misrepresentations as to the character, quality and value of the stock of goods. Compton answered and set up a claim to affirmative relief. After the pleadings on both sides had been substantially recast and issues had been joined, the case came on for trial. A jury was called, which returned answers to special questions. The court approved these answers and rendered judgment canceling the deed and canceling the note given by Sell, a portion of which remained unpaid after the proceeds of the chattel mortgage sale had been credited on it. Compton appeals.

One of the issues upon which the court instructed the jury was whether or not the plaintiff had full opportunity to examine the goods before purchasing them. The jury returned the following findings relating to this issue:

"5. Did Compton, before the signing of the contract and delivery of the deed, tell Sell that if he (Sell) did not think that the stock would invoice $12,000.00, they would invoice it? Answer. No.

"6. Did Compton do anything to prevent Sell, or Case, or anyone else acting for Sell, from making any examination of the stock of goods they cared to make? Answer. Yes.

"7. If you answer the last preceding question in the affirmative, state what was done. Answer. The trade rushed through, and they did not have time to investigate the stock."

There is no testimony in the record to support these findings, and all the testimony given on the subjects to which they relate is contrary to them.

The court instructed the jury that if the defendant was guilty of fraud it was the duty of the plaintiff to act promptly on discovery of the fraud, to return or offer to return the goods, and to demand restoration of the title to his land; and that if he said nothing and continued to sell the goods, he waived the fraud and could not complain of it. The evidence was that the plaintiff doubted the representation of the defendant as to the quantity of goods in the store when the trade was concluded. About February 12, one of the plaintiff's witnesses looked through the stock and told the plaintiff what he had. The plaintiff then employed a man to invoice the stock and a complete invoice was taken, the plaintiff himself assisting part of the time. In taking the invoice the character and quality of the goods were revealed. In this invoice the goods and fixtures were priced at $7757.59. The goods amounted to $6243.39 and were worth 40 cents on the dollar, or less than $2500. The fixtures were of small value. The alleged representation of the defendant was that the goods and fixtures were of the value of $12,000. With complete and detailed knowledge of just what he had received for his farm the plaintiff, instead of rescinding, put on a ten-day "Fearless Price Cutting Sale," beginning February 28. The station agent at Lehigh testified that the plaintiff made the following shipments of goods to other points: February 5, one box shoes, weight 100 pounds; one box shoes, weight 50 pounds; February 21,

two boxes dry goods, weight 70 pounds; March 6, five boxes dry goods, weight 550 pounds; four boxes canned goods, weight 275 pounds; March 9, two zinc trunks, checked as baggage, weight 200 pounds; two zinc trunks, checked as baggage, weight 250 pounds. The plaintiff did not make deposits of the proceeds of sales as he had agreed to do. On March 8, the defendant called on him in reference to the matter, and instead of rescinding the trade he made a payment on his note of $193.20. On March 19 he made another payment. On March 20 he yielded possession to the defendant, without protest or complaint. The chattel-mortgage sale occurred on April 19, and still no indication was given to the defendant that the trade was unsatisfactory. The action was commenced on May 23.

The plaintiff said he did not think he was defrauded very much until the day the defendant demanded possession under the chattel mortgage, when the defendant said he did not think there were goods enough in the store to pay the mortgage. The plaintiff had full opportunity to know the facts and had the means of acquiring knowledge of the facts at least from the day he took possession of the store. Allowing time to improve them, such means and opportunity were equivalent to knowledge. But the plaintiff had actual knowledge of the essential facts probably on February 12, and certainly by February 28, and he can not be heard to say that he postponed the mental act of drawing the inference of fraud from the known facts. It was then his duty to repudiate the contract if he ever intended to do so. The law did not permit him to select his own time and consult his own convenience in rescinding. (*Bell v. Keepers,* 39 Kan. 105, 108, 17 Pac. 785.) He could not speculate on the probability of deriving some advantage from the trade (*Neal v. Reynolds,* 38 Kan. 432, 435, 16 Pac. 785), and the law implied affirmance from his unequivocal conduct in selling and shipping

goods and making payments on his note (*Trust Co. v. McIntosh*, 68 Kan. 452, 75 Pac. 498).

The plaintiff testified that he ordered new goods for the store to the amount of $618 while he was in possession. The amount was not corroborated by any bills or receipts or checks or other memoranda. Neither full nor accurate accounts were kept of the goods which went out of the store. But granting that all the new goods were in the store when the defendant foreclosed the chattel mortgage, and crediting the plaintiff with the payments made on the note, the evidence shows there was still a deficiency. If it had been possible to determine the amount of the shortage with accuracy, compensation might have been made. (*Basye v. Refining Co.*, 79 Kan. 755, 101 Pac. 658.) But it was not, and because of lapse of time and the conduct of the plaintiff the defendant completely changed his situation. (*Bell v. Keepers*, 39 Kan. 105, 17 Pac. 785; *Trust Co. v. McIntosh*, 68 Kan. 452, 75 Pac. 498, and authorities there cited.)

From what has been said it is manifest that the plaintiff has no standing in equity to obtain relief by way of rescission and cancellation. His pleadings are in such form that they might be amended to ask for damages if he should see fit to make the request and the court, in its discretion, should permit.

The judgment of the district court is reversed and the cause is remanded.