No. 24,253.

CHARLES SYLVESTER, *Appellee*, v. A. E. LYNDE and EDNA L. LYNDE (MIKE RUECK et al., *Appellees*), *Appellants*.

### SYLLABUS BY THE COURT.

1. CONTRACT—*Sale of Land—False Representation by Vendor's Agent—Waiver of Right to Rescind Contract*. Although a vendor of real estate is responsible for any false representations of his agents who negotiate a sale of his property, he is under no absolute duty to repudiate their conduct; he may stand by the contract made in his behalf, and he can maintain an action to enforce it, subject, of course, to defenses based upon the falsity and materiality of the representations made by his agents for which he is responsible.

2. SAME. It is altogether immaterial whether a false statement as to a vendor's lowest price on property would justify rescission of a contract by a vendee who relied thereon and purchased the property pursuant thereto, when no attempt was made by the vendee to rescind the contract on account of such false statement.

3. SAME—*Fraudulent Representation—Necessity of Prompt Action on Discovery of the Fraud*. When a party has been duped into making a contract, unless he chooses to be bound by it, it is his duty to repudiate the contract and to give prompt notice of his intention to rescind after learning of the fraud or duplicity which induced him to make it.

4. SAME—*Vendee's Conduct Inconsistent With Right to Rescind the Contract*. The facts touching the conduct of the vendee of a farm, after learning that he had paid a higher price for it than the owner had specified to his agents, as set forth in the opinion, examined, and held that defendant's conduct was altogether inconsistent with any right to rescind; that defendant's acts constituted ratification; and that he was equitably estopped to avoid the contract.

Appeal from Geary district court; CASSIUS M. CLARK, judge. Opinion filed May 12, 1923. Affirmed.

Sylvester v. Lynde.

A. E. Crane, J. E. Addington, both of Topeka, Lawrence B. Morris, and U. S. Weary, both of Junction City, for the appellants.

R. P. Evans, George Clammer, both of Manhattan, J. V. Humphrey and A. S. Humphrey, both of Junction City, for the appellee.

The opinion of the court was delivered by

Dawson, J.:   This lawsuit grew out of a real-estate transaction which was complicated by some selfish chicanery on the part of the agents of the vendor.

The plaintiff, Charles Sylvester, listed his Riley county farm of 320 acres for sale.   His agents were Mike Rueck and Ben Bohnenblust.   These agents made a private deal of their own with A. F. Irish and C. A. Seavall, for the purpose of disposing of plaintiff's farm to A. E. Lynde and wife for a consideration in excess of what plaintiff expected to get for it, and to convert that excess to their own use.   In pursuance of this scheme, the agents and Seavall called on the plaintiff, and Seavall agreed to buy the property for $25,500, and the parties were to meet the next day at Manhattan and consummate the deal.   When plaintiff, who was a German who neither spoke nor understood English, came to town next day, July 9, 1920, his agents advised him that Seavall could not be found, but that Irish would buy the farm on the same terms, $1,000 in cash, $1,500 in 30 days, and the balance, $23,000, on March 1, 1921.   In actual truth, they had traded the farm to A. E. Lynde and wife for a mortgaged house in Manhattan, a garage and equipment, and a transfer business and equipment, and $23,000 in cash to be paid on March 1, 1921.   The agents took plaintiff and his son to the office of one Henry Otto, and caused a contract to be prepared evidencing the trade which they had actually made with Lynde, but pretending that it merely contained the terms of plaintiff's supposed sale to Irish.   The plaintiff did not comprehend the terms, and his young son was mystified by its verbiage; but plaintiff signed the contract, and also signed a paper transferring to Irish the excess property which he, unknown to himself, was to receive from Lynde.   Then the agents lured plaintiff out of town for a couple of hours, while they got Lynde and wife to come to Otto's office and obtained their signatures to the contract, and got a deed from them to the Manhattan property with the name of the grantee omitted.   When Lynde and wife had signed the instruments and departed, the agents and their confederates paid to plaintiff the first $1,000 due on the farm,

and in due time paid the next $1,500, and disposed of the property received from Lynde to suit themselves.

It was not until the following February, seven or eight months later, that plaintiff discovered that it was to Lynde that he had conveyed his farm and that he had not sold it outright for $25,500; nor until that time did Lynde discover that he had agreed to pay in property and money more than the plaintiff expected to receive. However, after making that discovery, Lynde took possession of the farm and made efforts to raise the $23,000 due on March 1. Finding that a mortgage company would only loan $12,000 on the farm, he requested plaintiff to accept that amount and a second mortgage for the remainder. He also made some efforts to sell the farm for $36,000 or more.

The $23,000 due on March 1, 1921, not being forthcoming, the plaintiff, on April 21, 1921, brought this action, alleging in detail all the facts concerning this curious transaction. He sued everybody— Lynde and wife, the agents and their confederates, and prayed for specific performance and for judgment for $23,000 against Lynde and wife and for a first lien on the farm and that such lien be foreclosed, and that he be protected from liability on the mortgage covering the Manhattan residence property which he had unwittingly received from Lynde and assigned to Irish.

Lynde's answer similarly recited the facts at length, and alleged that the plaintiff's agents and their confederates falsely represented to him that the plaintiff would not take less than $36,000 for the farm and that it was well worth that sum, and that in reliance upon such false representations he signed the contract; and that "upon learning of said facts, offered to return all the property they had received under said contract."

The agents and their confederates were eliminated from this action after certain demurrers to evidence were sustained in their favor, and upon announcement of counsel for Lynde and wife "that they make no claim of a cause of action against said demurring defendants."

As between the principal litigants the trial court made findings of fact, which in part read:

"5. At the time the real estate agents arranged with the defendants Lynde to purchase the farm of the plaintiff, they falsely represented that the plaintiff would not sell said farm for less than $36,000. . . .

"7. Neither the plaintiff nor the defendants Lynde at the time of the execution of said contract knew of the enterprise of Rueck, Bohnenblust, Seavall

and Irish. The plaintiff and the defendants Lynde did not learn of this enterprise until the latter part of February, 1921, and upon learning of the same neither the plaintiff nor said defendants Lynde offered to rescind said contract, but both continued to treat the same as fully in force.

"8. The defendant A. C. Lynde within a few days after the execution of the contract set out in plaintiff's petition, in company with the real estate agent from Junction City, went over the farm in question, thoroughly, and learned its character and value. He had also viewed the farm a short time prior to the execution of said contract. He made repeated efforts to sell the farm at a price above $36,000. He took possession of said farm in February, 1921, and continues in possession thereof and expressed satisfaction with his bargain. He made efforts to borrow money upon the same, and in doing so valued the same at $40,000. In February, 1921, the defendant A. E. Lynde offered to raise $12,000 by mortgage upon said farm, which amount he would pay to the plaintiff providing the plaintiff would accept a second mortgage on the farm for the balance of the purchase price, and stated to the plaintiff that unless the plaintiff did so, he, the defendant, Lynde, would be unable to complete the purchase of said land."

"CONCLUSIONS OF LAW.

"1. The representations made upon the part of the real estate agents, that the plaintiff would not accept less than $36,000 for his farm, although false, are not the basis of any action on the part of the defendants Lynde.

"2. The defendants Lynde, after learning of the misrepresentations made to them by the real estate agents, at the time of the execution of the contract set out in plaintiff's petition, ratified the sale as made to them.

"3. The plaintiff is entitled to the relief prayed for.

"In addition to the above findings, the court found that the property of the appellants as referred to in the contract was of the value of $11,500 at the time." [Apparently subject, however, to mortgage for $6,135.]

Judgment was entered in favor of plaintiff; a lien to satisfy it was awarded, and foreclosure decreed and order of sale directed; and the plaintiff was adjudged to be without liability of assumption of the mortgage on the Manhattan residence.

Defendants appeal. They contend that plaintiff was not entitled to have the contract specifically enforced. In this case, so far as plaintiff was concerned, specific enforcement meant nothing more than a judgment for the amount due him on his farm, and the decree for a lien on the farm and for its foreclosure was but an incident thereto. It is argued that when plaintiff discovered the duplicity of his agents he should have disavowed their acts and offered to rescind. He did not need to do anything of the sort; he could have ratified their acts; he could have appropriated all the property received from Lynde to himself, and discharged his unfaithful agents without

any compensation because of their unfaithfulness to him (*Jones v. Hall,* ante, p. 368.) And so far as Lynde and wife are concerned, whether plaintiff renounced or affirmed the acts of his agents, Lynde and wife could hold the plaintiff to full responsibility for those acts of his agents. These observations are simple matters of elementary law, be their effect on this lawsuit what it may.

We need not stop to decide whether the false representation of the agents that plaintiff would not take less than $36,000 for the farm was of sufficient gravity to justify rescission by the defendants. The defendants made no effort to rescind on that account.

The next contention is that defendants were entitled to a rescission of the contract and a return of their property. Let it be conceded that the circumstances would have justified rescission if defendants had sought to do so, yet it is elementary that when a party to a contract has been duped into making it, it is his duty to repudiate the contract and to give notice of rescission promptly after learning of the fraud or duplicity which induced him to make the contract. (*Bell v. Keepers,* 39 Kan. 105, 108, 17 Pac. 785; *Cookingham v. Dusa,* 41 Kan. 229, 21 Pac. 95; *Manufacturing Co. v. Moore,* 46 Kan. 324, 26 Pac. 703; *Mills v. City of Osawatomie,* 59 Kan. 463, 53 Pac. 470; *Trust Co. v. McIntosh,* 68 Kan. 452, 75 Pac. 498; *Sell v. Compton,* 91 Kan. 151, 136 Pac. 927; 13 C. J. 615-625; 2 Black on Rescission & Cancellation, §§ 536, 638.)

Here defendants did nothing to indicate an intention to rescind. On the contrary, after learning of the fraud—if the duplicity of plaintiff may properly be characterized as such, so far as concerns the defendants—they deliberately entered into possession of the farm, and still retain the possession of it; they sought to negotiate a loan on it to pay the balance due to the plaintiff; they endeavored to persuade plaintiff to accept the proceeds of a $12,000 first mortgage and to take a second mortgage for the balance due, and made various efforts to sell the farm at a price above $36,000, and expressed satisfaction with their bargain. These facts not only show a waiver of any right of rescission but constitute ratification of the clearest sort; and defendants' course of conduct following the discovery of the agents' duplicity completely bars them of any claim for damages, under the simplest principles of equitable estoppel. See excerpt from *Tarkington et al. v. Purvis,* 128 Ind. 182; 9 L. R. A. 607, quoted in *Railroad Co. v. Gorman,* 79 Kan. 643, 653, 100 Pac. 647. *Lillard v. Johnson County,* 102 Kan. 822, 172 Pac. 518.

In *Powers v. Scharling,* 76 Kan. 855, 859, 92 Pac. 1099, the matter of inconsistency of conduct was discussed, and it was there said:

"Whether the principle is described as equitable estoppel, *quasi* estoppel, waiver, ratification, election or as a requirement of consistency in conduct, is not very important. It is really but an application of the homely proverb that one may not eat his cake and have it too."

Judgment affirmed.