No. 23,022.

C. B. MORTON and D. A. DABNEY, *Appellants,* v. L. H. BRINKS et al., *Appellees.*

SYLLABUS BY THE COURT.

1. CONTRACT—*Drilling Oil Well—Fraudulent Representations—Action for Breach of Contract—Evidence—Findings.* In an action upon a contract for drilling a well, where the defendants asked rescission because of fraud practiced in its procurement, the jury made a special finding to the effect that the defendants had not asked an extension of time after discovering the fraud. The defendants admitted that after the real facts had become known one of them wrote the plaintiffs a letter saying, "I . . . kindly ask you for a ten days' extension of our drilling contract." It is held that the special finding was contrary to the evidence, and requires a new trial.

2. SAME—*Evidence—Findings—Verdict.* It is held that no reversible error was committed in the admission of evidence, and that the verdict and the special findings other than that already referred to were not without support.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed April 9, 1921. Reversed.

*J. B. Tomlinson,* of Independence, for the appellants.
*Thomas E. Wagstaff,* of Independence, for the appellees.

The opinion of the court was delivered by

MASON, J.: On August 15, 1918, C. B. Morton and D. A. Dabney, who owned an oil and gas lease on a 200-acre tract, entered into a written contract with L. H. Brinks and James Brinks, known as Brinks Brothers, by the terms of which the latter agreed to drill a well thereon in consideration of receiving a three-fourths interest in 80 acres thereof, and to deposit $1,000 with a bank as a guaranty of their fulfilling their agreement. The Brinks brothers made the deposit but refused performance of the contract on the ground that they had been induced to enter into it by fraudulent representations. Morton and Dabney sued the Brinks brothers, making the bank a party, and asking the recovery of the thousand dollars as damages for the breach of the contract. Judgment was rendered for the defendants and the plaintiffs appeal.

1. Reversal is asked upon various grounds, one of which is regarded by us as sufficient to require that action, and this will be first considered. The plaintiffs among other things pleaded that whatever right the defendants might otherwise have had to rescind the contract had been lost by their having recognized it as binding after having discovered the fraud, and this was one of the issues submitted to the jury. The representations alleged to have been falsely made by the plaintiffs were that six wells that had already been drilled on the lease were paying wells, and that a pipe line was being laid to the lease for the purpose of marketing the oil produced therefrom. The jury returned a negative answer to the question: "Do you find that after defendants were aware that no pipe line had been or was being built to the lease, and after they claimed to have discovered that there was not oil in pay-

ing quantities in each of the six wells, that they asked plaintiffs for an extension of time in which to perform, or that they offered to pay money for a release from, the contract?" One of the defendants testified that on September 27 or 28, 1918, after an examination of the property he told the plaintiffs that he had learned that no pipe line to the lease had been or was being laid; that he had observed at last that as far as he could see they had no oil there in paying quantities; that the thing had been misrepresented; that it would be criminal for the defendants to put their money and that of their friends into it; and that they asked a cancellation of the contract. He further testified that on October 8 following he said to one of the plaintiffs: "My brother-in-law is very dangerously ill and they want me to come; will you grant an extension of time on the contract, to carry out a compromise if possible, because I don't know when I'll be back." He also admitted the writing and mailing of a letter to the plaintiffs a week later in which he said, "Arrangements are being made for the funeral. I do not know when I can leave here and kindly ask you for a ten days' extension on our drilling contract. Please send me reply by return mail."

It is clear that before the 8th of October the defendants had learned the facts in relation to the matters concerning which they claim to have been deceived. Perhaps the reference to a compromise in the spoken words quoted may justify regarding them as not amounting to an unqualified request for an extension of time for performing the contract, but the language of the letter is too explicit for any other interpretation. The jury in finding that after the discovery of the fraud the defendants had not asked for an extension of the time in which to perform the contract must have overlooked or ignored the testimony referred to, which of course was binding upon the defendants. A verdict reached without giving weight to this testimony cannot stand, because it manifestly had a direct and important bearing upon the question whether the defendants had waived their right to rescind the contract by recognizing it as valid after discovering the fraud that had been practiced upon them. If a party to a contract whose consent thereto has been fraudulently procured recognizes it as a binding agreement after learning of the fraud, or even of the

substance of the fraud (6 R. C. L. 934), he thereby loses his right to demand its rescission. (13 C. J. 624.) A request for an extension of time, at least where it is granted or is accompanied by a promise in that event to perform, has been held to constitute such a recognition. (2 Black on Rescission and Cancellation, § 602. See, also, *Price v. Immel,* 48 Colo. 163; *Dashiell v. Christian et al.,* [Tex. Civ. App.] 152 S. W. 1112.) However, it is unnecessary to discuss that phase of the matter further, for the trial court instructed the jury that the defendants could not recover if they recognized the contract by asking for an extension of time to perform its terms. Perhaps a consideration of the whole evidence may qualify the apparent effect of the defendant's letter as a recognition of the contract, and for this reason a new trial instead of a judgment for the plaintiffs will be ordered.

2. As the other questions argued may arise upon a subsequent trial it is necessary that they be passed upon here. One of the defendants testified to a conversation between himself and one of the plaintiffs prior to the execution of the contract. At the commencement of this testimony the plaintiffs asked that it be limited to what was said with reference to the production of oil from the wells and to the pipe line, and at its conclusion they asked that it all be stricken out excepting that relating to this and to two other specified subjects. Both requests were refused. By granting the latter only a small amount of the testimony would have been excluded. We think the objection to it should have been sustained, although its admission was not so prejudicial as to justify a reversal. The plaintiffs urge that the evidence concerning the representations as to the building of a pipe line should have been excluded, inasmuch as the oil could have been marketed without it. If the pipe line had in fact been in course of construction it would have been substantial evidence of the plaintiffs' confidence in the producing character of the wells already drilled, and would have corroborated their representations in that respect. We regard this consideration as making material the evidence concerning what was said about the pipe line. The wells that had already been drilled on the leases were shallow, while that to be drilled under the contract was to go to the deeper sand. The plaintiffs argue that the product.vity

Morton v. Brinks.

of the shallow wells had no important bearing on the contract. It had, however, a bearing on the value of the lease, an interest in which was to be the defendants' compensation for drilling the deep well. The argument is also made that the defendants investigated the property for themselves and had an opportunity to judge of its value. Notwithstanding this they were entitled to rely upon the plaintiffs' representations, which were not merely matters of opinion. (*Foote v. Wilson,* 104 Kan. 191, 178 Pac. 430.)

The contention is made that the evidence does not support the judgment for reasons that have in substance already been considered, and also because the defendants were not shown to have suffered any injury by the representations if they were made and were false. The defendants are asking a rescission of the contract because they were induced to enter into it by false representations affecting the value of what they were to receive under it. If the contract stands they lose $1,000. As a further ground for a directed verdict in their favor the plaintiffs allege that the defendants have changed the character of their claim concerning the facts entitling them to a rescission; that at first, as shown by their original petition and by their evidence on a former trial, they relied only on false representations concerning the pipe line. There was evidence, however, that at the time of the earliest demand for rescission complaint was made of false representations that the plaintiffs had oil in paying quantities in the shallow sand. The omission of an allegation respecting this matter from the petition as originally prepared and filed was not fatal to its consideration, nor are the defendants absolutely bound by their testimony at a former trial.

Complaint is made of other findings of the jury than that already discussed, but we do not find them to have been without support in the evidence.

The judgment is reversed and the cause is remanded for a new trial.