Morton v. Brinks.

---

. No. 24,331.

C. B. Morton and D. A. Dabney, *Appellees,* v. L. H. Brinks and James Brinks, *Appellants.*

#### SYLLABUS BY THE COURT.

Contract—*Defendants to Drill Oil Well—Money Deposited to Guaranty Performance—Default of Defendants—Action by Plaintiffs to Recover Money Deposited—Claim of Fraud—Waiver of the Fraud.* In an action to recover money deposited in a bank to secure the performance of a contract to drill an oil and gas well, where the evidence shows that the contract was obtained by the plaintiffs by their false and fraudulent representations but that the defendants after the discovery of the fraud wrote letters showing an intention to be bound by the contract, judgment should be rendered for the plaintiffs.

Appeal from Montgomery district court; Joseph W. Holdren, judge. Opinion filed October 6, 1923. Affirmed.

*Thomas E. Wagstaff,* of Independence, for the appellants.
*Chester Stevens,* of Independence, for the appellees.

The opinion of the court was delivered by

Marshall, J.: The plaintiffs sued to recover $1000 that had been deposited by the defendants in the Commercial National Bank of Independence, to be paid over to the plaintiffs as liquidated damages in the event that the defendants failed to commence drilling for oil and gas on certain real property within the time specified in the contract therefor. The defendants say that the deposit and contract had been procured by the fraudulent false representations of the plaintiffs. Judgment was rendered for the plaintiffs on a demurrer to the evidence of the defendants, who appeal.

The evidence of the defendants showed that the plaintiffs held an oil and gas lease on two hundred acres of land in Montgomery county and that on the lease there were some six wells that had been drilled for oil and gas, in some or all of which there was some oil. The evidence of the defendants also showed the plaintiffs had represented to the defendants that oil in paying quantities was being produced by the wells; that one of the wells had eighteen feet of oil sand in it; that another had produced 35 barrels of oil per day, pumping on the "beam," and that a pipe-line for the transportation of oil was being constructed on the lease. The evidence also tended to show that all of these representations were false; that the defendants believed the representations were true and relied on them; and that the defendants were induced thereby to enter into the contract and make the deposit of $1000.

The contract contained the following provisions:

"Second parties [the Brinks] agree that within sixty (60) days from the date of the acceptance of this agreement by first parties, to commence drilling for oil and gas on above described lease and to continue same in a workman-like manner until the depth of 1400 feet, provided they do not find a paying well in the Bartlesville sand at a shallower depth, it being understood and agreed that second parties are not to stop at the sand that is found at about 850 feet on above described lease, but to make a test well to what is known as the Bartlesville sand which is being found at between 1340 and 1400 feet. Second parties are to pay the expense of drilling, casing, equipping, shooting and cleaning said well and completing same. . . . . . . . . . . . .

"It is further understood and agreed that second parties have the privilege of taking this contract to Minnesota and there inspect same and consult with the other member of second party, if they desire to go ahead with this contract they agree to send a signed copy of this contract to the Commercial National Bank of Independence, Kansas, together with certified check for $500.00, which check shall be left on deposit for thirty (30) days from the date of its reception, if at the end of that time they have commenced a well on said above described premises they shall have the privilege of taking down the check; if they have not commenced drilling and want to continue this contract for another [forty] (40) days they shall have that privilege by depositing another $500.00. At the end of the forty (40) day period if they have not commenced drilling, the bank is hereby instructed to turn over the $1000.00 to Morton & Dabney and this contract shall be considered at an end."

The contract was dated July 25, 1918, and was accepted August 15, 1918. A deposit of $500 was then made and afterward a second deposit of $500 was made. On October 15, 1918, defendant James Brinks from Minneapolis, Minn., wrote to the plaintiffs at Independence, Kan., as follows:

Morton v. Brinks.

"Saw my brother Luke. He told me of the condition on the lease for which we hold contract. As no pipeline has been laid, which I was told by you men that it was being laid, to which I can and will make a sworn statement. I think you men will be on the 'square' with us, as I have always taken you to be men of your word, and think you will if we get the right understanding. Since no pipe line has been laid or is in sight, you should meet us half way on our contract."

The following letter written by L. H. Brinks was introduced in evidence:

"Messrs. Dabney & Morton,                    "Pease, Minn., Oct. 15, 1918.
    Independence, Kansas.
*"Dear Sirs:*

"My brother-in-law who was at Camp Grant has passed away. He was to me like my own brother. Arrangements are being made for the funeral. I do not know when I can leave here, and kindly ask you for a ten days' extension on our drilling contract. Please send me reply by return mail."

Before these letters were written, L. H. Brinks had been to Montgomery county and had learned that the representations made by the plaintiffs to the defendants to obtain the contract and deposits were false. The extension of time requested in the letter of L. H. Brinks was not granted. That letter showed an intention to perform the contract. L. H. Brinks knew, when he wrote that letter, that the false representations had been made. The letter written by James Brinks shows that he knew, when he wrote, that the representations which had been made were false. The letters do not show an intention not to be bound by the contract. On discovering the fraud, the defendants should have acted promptly if they desired to rescind the contract and recover the money that had been deposited by them. (*Bell v. Keepers,* 39 Kan. 105, 17 Pac. 785; *Mills v. City of Osawatomie,* 59 Kan. 463, 53 Pac. 470; *Trust Co. v. McIntosh,* 68 Kan. 452, 75 Pac. 498; *Sell v. Compton,* 91 Kan. 151, 155, 136 Pac. 927; *Thompson v. Millikin,* 93 Kan. 72, 75, 143 Pac. 430.) Instead of rescinding, they wrote letters indicating an intention to abide by the contract.

In 2 Black on Rescission and Cancellation, § 604, this language is found:

"Where the vendor waives a forfeiture by extending the time of payment after maturity, this does not vest the title to the property in the purchaser, nor authorize a decree of specific performance requiring its conveyance to him without payment being first made in full, but the contract remains executory and binding on both parties."

One of the headnotes to *Dashiell et al. v. Christian et al.*, 152 S. W. 1112 (Tex. Civ. App.) reads:

"A purchaser could not rescind because of a fraudulent representation that a creek ran through the land, where, although he learned long before the attempted rescission that this was not so, he failed to make known to the vendor that he had been defrauded, but, instead, sought an extension of time for payment of the first vendor's lien note, since a purchaser desiring to rescind for fraud, accident, or mistake must proceed promptly, or he will lose such right."

This is the second time this cause has been in this court. (*Morton v. Brinks*, 108 Kan. 743, 197 Pac. 210.) This court there said:

"If a party to a contract whose consent thereto has been fraudulently procured recognizes it as a binding agreement after learning of the fraud, or even of the substance of the fraud (6 R. C. L. 934), he thereby loses his right to demand its rescission. (13 C. J. 624.) A request for an extension of time, at least where it is granted or is accompanied by a promise in that event to perform, has been held to constitute such a recognition." (p. 745.)

Under the evidence, the defendants could not prevail, and the plaintiffs were entitled to recover. The demurrer to the evidence of the defendants was properly sustained. There was no error in rendering judgment for the plaintiffs.

The judgment is affirmed.