No. 27,159.

H. O. TRINKLE, Trustee of the Estate of J. C. TYLER, Bankrupt, *Appellant,* v. L. E. CHASE and G. W. HAFLICK, *Appellees.*

SYLLABUS BY THE COURT.

BANKRUPTCY—*Property Passing to Trustee—Debtor's Right of Redemption.* After the sale of real property on execution, a trustee in bankruptcy cannot look to the debtor's right of redemption for assets with which to pay claims of creditors.

Appeal from Finney district court; CHARLES E. VANCE, judge. Opinion filed February 12, 1927. Affirmed.

*Edgar Foster* and *Horace J. Foster,* both of Garden City, for the appellant.

*William Easton Hutchison, C. R. Hope, A. M. Fleming,* all of Garden City, *Bennett R. Wheeler, S. M. Brewster* and *John L. Hunt,* all of Topeka, for appellee G. W. Haflick.

The opinion of the court was delivered by

MARSHALL, J.: The action is one by a trustee in bankruptcy to set aside deeds conveying real property and asking that plaintiff as

Bankruptcy, 7 C. J. p. 116 n. 55.   Executions, 23 C. J. p. 345 n. 70.

trustee be declared the owner of that property to be used for the payment of claims against the estate of the bankrupt. It is alleged that the deeds were made for the purpose of hindering, delaying, and defrauding the creditors of the bankrupt. Judgment was rendered in favor of the defendants, and the plaintiff appeals.

The action was tried without a jury, and special findings of fact and conclusions of law were made as follows:

"1. On the 26th day of December, 1919, and for some time prior thereto one James C. Tyler was the owner of the real estate described in the plaintiff's petition consisting of approximately 1,760 acres in Finney county, Kansas.

"2. On the said 26th day of December, 1919, the said James C. Tyler and his wife made, executed and delivered to the Davis-Wellcome Mortgage Company a mortgage on said lands to secure the payment of the sum of $17,500, and on the same date made, executed and delivered to the said Davis-Wellcome Mortgage Company a second mortgage on said lands to secure the payment of the sum of $1,837.50 payable as follows: $131.25 on the 15th day of July, 1920, and $131.25 at the end of each six months thereafter. Both of said mortgages were duly filed for record in the office of the register of deeds of Finney county, Kansas, on the 29th day of January, 1920.

"3. On the 29th day of January, 1921, the said James C. Tyler made, executed and delivered to one W. B. George a mortgage on the lands described in plaintiff's petition to secure the payment of the sum of $24,396.39, which mortgage was duly filed for record in office of the register of deeds in Finney county, Kansas, on said 29th day of January, 1921, which said mortgage was by the said W. B. George duly assigned to the First National Bank of Garden City, Kansas, on the 28th day of January, 1922.

"4. That on the 19th day of February, 1921, at a term of court which began on the second Monday of December, 1920, and in an action which was filed on the 3d day of April, 1920, one J. W. Gray, doing business as the Gray Tractor Company, recovered a judgment in the district court of Finney county, Kansas, against the said James C. Tyler for the sum of $760, debt bearing interest at the rate of 7 per cent per annum and $8.20 costs.

"5. That on the 14th day of June, 1921, pursuant to an execution issued out of the district court of Finney county, Kansas, on the judgment mentioned in finding No. 4, the sheriff of Finney county, Kansas, sold the lands described in the plaintiff's petition to the said J. W. Gray for the sum of $804, which sale was later, and on the 17th day of June, 1921, duly confirmed by the district court.

"6. That on the 4th day of February, 1922, and for some time prior thereto the McAllister Lumber Company, a corporation, had a lien on the lands described in plaintiff's petition by virtue of a mechanic's lien and a judgment foreclosing same recovered in the district court of Finney county, Kansas, which on said date amounted to approximately $360.

"7. That on the said 4th day of February, 1922, the said James C. Tyler conveyed by quitclaim deed to the defendant L. E. Chase, who is an uncle of the said Tyler, all of his right, title and interest in and to the lands de-

Trinkle v. Chase.

scribed in the plaintiff's petition, which deed was filed for record in the office of the register of deeds of Finney county, Kansas, on the 6th day of April, 1922.

"8. That in consideration of the conveyance of said lands to him, the said L. E. Chase paid to the said James C. Tyler the sum of one dollar ($1) in cash, and shortly thereafter paid taxes on said lands in the sum of approximately $776, paid the lien of the McAllister Lumber Company, and paid interest on the two mortgages on said lands in the sum approximating $2,000, which included some installments of the principal due on the second mortgage, redeemed said land from the sheriff's sale to Gray on the 6th day of April, 1922, the amount necessary to effect such redemption being $840.27, and took said lands, subject to a balance of principal and interest due on the first and second mortgages hereinbefore mentioned of approximately $18,800.

"9. That on the 29th day of June, 1922, the defendant L. E. Chase and his wife conveyed said lands by general warranty deed to the defendant C. W. Haflick, who is a brother-in-law of said Tyler, said deed reciting a consideration of $40,950, which deed was filed for record in the office of the register of deeds of Finney county, Kansas, on the 5th day of July, 1922.

"10. That the consideration for the conveyance of said lands from Chase to Haflick as described in finding No. 9 was $500 cash, which went to the said J. C. Tyler, who conducted the necessary negotiations for the sale, the transfer of indebtedness due the said Haflick from the said J. C. Tyler, secured by mortgage on Tyler's interest in Brown county lands, in the sum of $11,500 and mortgage back from Haflick to Chase in the sum of $11,450, and the mortgages against said land which were figured at $17,500, the second mortgage being treated as a part of the interest on the first mortgage, or what is generally known as a commission mortgage.

"11. That the said 4th day of February, 1922, the debt due from the said James C. Tyler to the First National Bank of Garden City, upon the note and mortgage originally given to W. B. George and described in finding No. 3 was wholly unpaid, and in addition thereto, the said James C. Tyler was indebted in sums totaling several thousand dollars to other persons, including the witnesses F. M. Dunn, L. A. Baugh, M. O. Willey and L. L. Jones, and was on said date insolvent, and the said L. E. Chase was on the said date fully aware of the financial condition of the said Tyler and that he was insolvent.

"12. That before taking said quitclaim deed from the said Tyler the said L. E. Chase consulted with attorneys and was advised that by taking such a deed and redeeming said lands from the sheriff's sale to Gray he would acquire the title to said land free from the lien of the mortgage executed to George and held by the First National Bank, and he took said deed and made such redemption with the intention and understanding that by so doing he would deprive the said First National Bank of any opportunity to redeem said land from the sale to Gray and leave the bank without any security for its debt, knowing at said time that this said James C. Tyler at said time had practically no other assets from which said bank or any of the other creditors mentioned in finding No. 11 could realize upon the debts due them from the said Tyler.

"13. That at the time he took the conveyance of said lands from the de-

fendant Chase the defendant Haflick was in a general way aware of the financial condition of the said James C. Tyler and of the manner in which said lands had been conveyed by Tyler to Chase.

"14. That said lands were at the date of the conveyance from Tyler to Chase and at the date of the conveyance from Chase to Haflick of the value of $20 per acre.

"15. That on the 23d day of January, 1923, the said James C. Tyler was adjudged bankrupt upon his voluntary petition, and on the third day of February, 1923, at the first meeting of his creditors, the plaintiff herein was duly elected as trustee of said bankrupt estate, and ever since has been and now is the qualified acting trustee of the same.

"16. That at the time of filing his voluntary petition in bankruptcy the said James C. Tyler scheduled as unsecured indebedness approximately $40,000 in claims, including the debt to the First National Bank, all of which claims either have been or will be claimed and proven in bankruptcy proceedings and will or should be allowed as just claims against the estate of said James C. Tyler.

"17. That the property of the estate of the said James C. Tyler which has or will come into the hands of the trustee for the payment of unsecured claims and the costs and expenses of the bankruptcy proceedings will not exceed in value the sum of $200.

"Conclusions of Law.

"1. The lien of the judgment in the case of Gray against Tyler dated back to the beginning of the term at which it was rendered and was prior and superior to the lien of the mortgage given to George and transferred to the bank.

"2. Tyler's equity of redemption in the land after the sale to Gray was exempt from execution and his creditors cannot complain of the purpose or consideration for which the same was transferred.

"3. The defendants are entitled to judgment for costs."

The principal question is: What was conveyed by the quitclaim deed from James C. Tyler to L. E. Chase? Tyler, at the time he executed the deed, had only a right of redemption from the sheriff's sale of the land. The determination of the question presented depends on the law of the state of Kansas giving the right to redeem land sold on execution. Section 60-3460 reads:

"Real estate once sold upon order of sale, special execution or general execution, shall not again be liable for sale for any balance due upon the judgment or decree under which the same is sold, or any judgment or lien inferior thereto, and under which the holder of such lien had a right to redeem within the fifteen months hereinbefore provided for."

The liens of some of the creditors of J. C. Tyler on the land were terminated by their failure to redeem from the sheriff's sale. Other creditors of J. C. Tyler did not have any lien on the land. What complaint can they make of the fact that Tyler conveyed his right

of redemption to L. E. Chase? Tyler was not compelled to redeem. He could have allowed the sale to stand. Section 60-3455 of the Revised Statutes reads:

"The rights of the defendant owner in relation to redemption may be assigned or transferred, and the purchaser or assignee thereof shall have the same right of redemption as the defendant owner; but the right of redemption shall not be subject to levy or sale on execution."

In *Kueker v. Murphy,* 86 Kan. 332, 334, 120 Pac. 362, this court said:

"The sale of the land under the judgment extinguishes the lien on it, without doubt, and the statute also provides that 'the right of redemption shall not be subject to levy or sale on execution'."

In *Jones v. Perkins,* 115 Kan. 759, 760, 225 Pac. 97, this court said:

"The right of redemption is not subject to levy or sale on execution."

In *In re Estate of Wood,* 118 Kan. 548, 235 Pac. 864, this court held that the right of redemption could not be ordered sold by the probate court for the payment of the debts of the deceased. The court said:

"If the right reserved to him by the statute—to retain the possession of the land for a fixed period with the privilege of redeeming it—were subject to be taken by a creditor this purpose would be defeated. To prevent this the clause was inserted that 'the right of redemption shall not be subject to levy or sale on execution.' The language should be interpreted liberally to promote the general end sought, rather than strictly according to the bare letter. A purpose is not lightly to be attributed to the legislature to withhold the occupancy and use of the land for eighteen months from the creditor (in this case a first lien holder) for whose benefit the sheriff's sale was made, while leaving it open to the claims of other creditors." (p. 549.)

If the right of redemption cannot be sold on execution, the trustee in bankruptcy cannot look to that right for assets with which to pay claims of creditors. If he cannot look to the right of redemption for assets he cannot maintain this action.

The judgment is affirmed.

HOPKINS, J., not sitting.