Bankers Mortgage Co. v. Robson.

No. 27,589.

THE BANKERS MORTGAGE COMPANY, *Appellee*, v. H. J. ROBSON et al., *Appellants*.

### SYLLABUS BY THE COURT.

1. LANDLORD AND TENANT—*Nature of Action for Rent—Effect of Incidental Inquiry as to Ownership of Property.* An action to recover money as rent for the use of real property is a transitory one, and the fact that an inquiry may incidentally arise as to the relation of landlord and tenant, or the ownership of the property, does not change the nature of the action or give it the character of a local action.

2. PLEADINGS—*Supplemental Answer—Discretion of Trial Court.* Where the issues in an action have been closed and the trial about to begin, the refusal of a motion to permit the filing of a supplemental answer injecting another issue into the case is held not to be an abuse of the discretion vested in the court.

3. LANDLORD AND TENANT—*Rescission of Lease—Waiver or Loss of Right.* A claim that a contract of lease is invalid in that misrepresentations as to existing conditions were made, which induced defendants to execute the contract for which a rescission is asked, is not a good defense where the defendant, after learning of the fraud or the substance of it, proceeds with performance and thereafter recognizes and treats the contract as a binding obligation.

4. CONTRACTS—*Fraud—Estoppel and Ratification.* To disaffirm a contract a party must act promptly upon the discovery of the fraud or lose the right of rescission.

5. LANDLORD AND TENANT—*Liability for Rent as Dependent Upon Improvements—Waiver of Defense by Taking Possession.* Where a landlord fails to complete or make improvements in a building as agreed upon with a tenant, the latter may refuse to take possession and pay rent, but if the tenant enters and holds possession of the building, notwithstanding the failure of the landlord, he cannot escape liability for the rent.

6. SAME—*Waiver of Condition by Taking Possession.* In entering possession of a building with the knowledge that the contemplated repairs or improvements have not been made, the tenant waives the stipulated requirement. He must either pay rent or restore possession.

7. BANKRUPTCY—*Property Passing to Trustee—Right of Redemption.* The right of redemption of real estate provided for in R. S. 60-3455 is exempt from levy and sale under judicial process, and the title thereto does not pass to a trustee in bankruptcy, nor become a part of the assets in bankruptcy.

Appeal and Error, 4 C. J. p. 799 n. 34. Bankruptcy, 7 C. J. p. 114 n. 42. Contracts, 13 C. J. p. 616 n. 1; 6 R. C. L. 935. Executions, 23 C. J. p. 345 n. 70. Landlord and Tenant, 35 C. J. p. 1173 n. 52; 36 C. J. pp. 332 n. 20, 399 n. 86; 16 R. C. L. 567, 793, 1000; 34 L. R. A. n. s. 977; 28 A. L. R. 1455. Pleading, 31 Cyc. pp. 368 n. 9, 397 n. 68, 509 n. 11.

Bankers Mortgage Co. v. Robson.

Appeal from Ellsworth district court; DALLAS GROVER, judge. Opinion filed June 11, 1927. Affirmed.

*D. M. McCarthy, R. W. Turner, D. F. Stanley* and *R. B. Turner,* all of Mankato, for the appellants.

*J. A. Fleming,* of Topeka, *Samuel E. Bartlett,* of Ellsworth, *C. W. Burch, B. I. Litowich* and *La Rue Royce,* all of Salina, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The Bankers Mortgage Company sued H. J. Robson and C. D. Robson to recover $1,200 for the rent of a hotel and adjoining apartments from March 1, to April 15, 1926. A verdict for $1,138 in favor of the plaintiff was returned by the jury under the direction of the court. Judgment was entered against the defendants and they have appealed.

In its petition plaintiff alleged that on August 18, 1925, defendants by a writing leased the property from Lena C. Pearcy and Glenn J. Pearcy, for a term of ten years, at a rental of $800 per month, payable in advance on the 15th day of each month; that the Pearcys made a written assignment and transfer of all their rights in the lease to the plaintiff; that the defendants had been in possession of the property under the lease with an obligation to pay rent from March 1, 1926, to April 15, 1926, and that the rental due had not been paid.

Defendants answered in effect that in procuring the execution of the lease Pearcy made misrepresentations as to the extent to which the completion of the building had progressed, that while the apartment section of the building had been completed and occupied, the two upper floors of the hotel section were incomplete; that the Pearcys represented there were no mechanics' liens existing on the building and no litigation pending which involved the property when in fact there were liens upon it, and that there were other misrepresentations as to water supply, sewage, heating plant, number of guest rooms, and as to the time required to complete the hotel part, and further that they had the funds to complete it; that they represented they were going to secure a loan from plaintiff of $37,000, which would be the only indebtedness against the property, and when secured would be clear of all liens except the $37,000 mortgage, and the apartment section was capable of a gross rental of $500 per month, which representations were alleged to be untrue. They further alleged that they were induced by these representations to enter into

the lease, and that the hotel part was never fully completed. It was further alleged that a certain bankruptcy proceeding had been begun in which Glenn Pearcy was adjudged a bankrupt; and further that there were foreclosure proceedings of mechanic's liens and transfers of the property which relieved defendants from an obligation to pay the rentals.

The plaintiff in reply alleged that Pearcy was in no sense its agent; that it had nothing to do with the representations made by him, and that defendants took possession of the building upon the condition that they would not be required to pay rent on the hotel part until the building was completed. That in December, 1925, defendants occupied and furnished the hotel, entertained guests and collected pay from the guests and tenants for entertainment; that after the lease was executed one of the defendants lived in the hotel a month before the chattel mortgage on their furniture was executed and the transaction for the loan closed, and thereby learned and knew all the existing conditions and thus ratified the lease, and was not in a position to assert fraud in the prior negotiations with Pearcy. That they had advertised the hotel as open and ready for business, had solicited a broker about January 10, 1926, to secure a purchaser for them, representing that the hotel was complete and modern with forty-five guest rooms, twenty-four baths, and that they could give possession at once. It was further alleged that on February 26, 1926, plaintiff gave notice to defendants that the hotel was complete and that rent would start on March 1, 1926, and that defendants did not then rescind the lease but continued to occupy the building until the latter part of April of that year. Evidence was produced by both parties and at the close of the evidence the court on the motion of plaintiff instructed the jury to return a verdict for plaintiff in the sum of $1,130.

The defendants challenged the jurisdiction of the district court of Ellsworth county, where the suit was brought, claiming that an interest in real estate was involved and that the action could only be brought in Jewell county, where the property was situated. It is manifest that the action was transitory in character, one for the recovery of money brought upon a written obligation to pay rentals. The defendants were not in Jewell county where service could be obtained, but in any event the action could be brought in any county where either defendant resided or could be summoned. (R. S. 60-509; *Marshall v. Land Co.,* 75 Kan. 445, 89 Pac. 905.) The

fact that an inquiry might incidentally arise as to the relation of landlord and tenant or the ownership of the property for the use of which the indebtedness arose, would not change the nature of the action nor warrant the plaintiff in proceeding on the theory that it was local in character. It was not one to try the title to real property or to quiet title or to determine an interest therein, nor could any judgment affecting the real estate be rendered in the action. All that could be determined was the liability of the defendants for the rentals that had accrued, and the court rightly overruled the challenge of its jurisdiction.

There is a complaint of a ruling refusing leave to file an amendment to the answer claiming damages for broken promises whereby defendants had been induced to spend money and time in the endeavor to operate the hotel for a period of seven months and had been deprived of all opportunity to conduct any other business. The application was not made until after the issues had been closed and a trial was about to begin on the issues previously formed, to the effect that the lease was void because it was induced by fraudulent representations. By the answer filed the defendants had asserted that there was no lease, and by the amendment they sought to set up a breach of the terms of the lease. The defenses were inconsistent, but regardless of that the question whether an amendment should be allowed at that late date was a matter within the discretion of the court, and it cannot be said that the refusal of the amendment was an abuse of discretion.

It is contended by defendants that the fraudulent representations made when the lease was first executed relieved them from any obligation to pay rent and entitled them to a rescission of the lease. Some of the circumstances about which there is no dispute follow:

Glenn J. Pearcy owned the real estate and undertook the erection of a hotel and apartment building. He completed the apartment portion of the structure, but in 1923 became financially involved and was unable to complete the hotel part of the building, the exterior of which was constructed but the interior was unfinished. A number of mechanic's liens had been filed against the building, amounting to about $49,000. These were foreclosed, and a receiver had been appointed to take charge of and operate the property while the foreclosure proceedings were pending. An order of sale was issued on the judgments and a sale made to trustees of the lien holders for their benefit for $48,682.84. The sale was confirmed on

September 19, 1924, and a certificate issued to the trustees, subject to the rights of Pearcy or his assigns, to the right of possession and use of the property during the redemption period of eighteen months. Pearcy and his wife then issued a quitclaim deed to R. C. Postlethwaite, and later Postlethwaite and his wife executed a quitclaim deed to Mrs. Lena C. Pearcy, reserving to himself rents sufficient to pay attorneys' fees and. some other items of indebtedness: Later they executed a second quitclaim deed to Mrs. Pearcy with a view of releasing the property from the reservation, and it is claimed placed in her full title to the equity of redemption. The Pearcys, being without means to complete the building, began negotiations with the Bankers Mortgage Company to secure a loan on the property and discharge the obligations against it. That company agreed to make a loan on the property providing the title was made satisfactory, the loan secured by a first mortgage, and that the property be rented so as to provide a fixed income, and that the payment of the rent be secured to its satisfaction for a period of at least two years. On August 27, 1925, Lena C. Pearcy and her husband executed a final lease to the Robsons for $800 per month. On September 25, 1925, she and her husband executed to the Bankers Mortgage Company a warranty deed of the real estate. The trustees and holders of the certificate of purchase executed and delivered to the mortgage company an assignment of the certificate of purchase. At that time the mortgage company executed to Lena C. Pearcy a quitclaim deed of the premises, and thereupon she and her husband executed and delivered to the mortgage company the mortgage mentioned upon the real estate to secure a loan of $37,000. The same day the Robson lease was duly assigned to the mortgage company, and it provided that the property was leased to the Robsons for a period of ten years, the rental to commence as soon as the two upper floors of the hotel were completed and ready for occupancy, at a rental of $800 per month to be paid in advance on the 15th day of each month. The defendants then executed a chattel mortgage on the furniture and equipment of the hotel to secure the payment of the rental for the first two years of the lease.

Was the lease void because of the representations made by Pearcy? It is stated that these were made on August 18, 1925, at Salina, where the negotiations were had for the lease, and by defendants' testimony it was disclosed that they moved their furniture to Mankato and began placing it in the building on August 23,

Bankers Mortgage Co. v. Robson.

1925, and that the lease was completed and finally signed four days later. One of the defendants testified that he knew that Pearcy was financially involved and without means to complete the hotel, and that he was negotiating for a loan with which to obtain means to pay the liens and judgments against it. It was also admitted that Pearcy said nothing to him at Salina about mechanic's liens or a city-owned water plant. One of the defendants also stated that he slept and stayed in the hotel from August 23, 1925, and learned of the progress made towards the completion of the building, and that considerable time was necessary to finish it; learned that the plumbing and heating had not yet been installed, and learned that there was a shortage of water and that the city was installing new wells to remedy the defect. They further knew that the hotel could not be completed without the proceeds of plaintiff's loan, nor until the transfers were made and title cleared so that plaintiff would have a first lien on the property. Knowing the conditions, and to facilitate the closing of the loan, defendants on September 21, 1925, executed the chattel mortgage on their furniture and equipment to secure the rental for the first two years of the lease period. Most of the alleged misrepresentations were negatived by defendants' testimony, but assuming that some of them were made, it is clear that the defendants knew the conditions about which complaint was made before the transactions were closed by the execution of the chattel mortgage and the making of the loan.

Fraud was the ground upon which the invalidity of the lease was claimed. With knowledge of the misrepresentations the defendants did not repudiate the contract nor ask for a rescission of it. Instead they executed the chattel mortgage and proceeded with installing their furniture in the hotel and the use of it, thereby recognizing its validity. In going on with the performance of their contract and inviting performance by the plaintiff they indicated an intention to abide by the contract and in this way waived the misrepresentations if any were made. It has been decided that if one is induced by fraud to enter into a contract and afterwards learning of the fraud or the substance of it recognizes it as a binding contract he waives the fraud and loses his right to rescind the contract. A party is not allowed to play fast and loose in such a transaction, and if he would disaffirm a contract for fraud he must act promptly after the discovery of the fraud or lose the right of rescission. (*Bell v. Keepers*, 39 Kan. 105, 17 Pac. 785; *Mills v. City of Osawatomie*, 59 Kan. 463,

53 Pac. 470; *Trust Co. v. McIntosh,* 68 Kan. 452, 75 Pac. 498; *Sell v. Compton,* 91 Kan. 151, 136 Pac. 927; *Elwood v. Tiemair,* 91 Kan. 842, 139 Pac. 362; *Morton v. Brinks,* 108 Kan. 743, 197 Pac. 210; *Morton v. Brinks,* 114 Kan. 319, 219 Pac. 527, and other cases cited therein.) The statements and admissions of defendants and their conceded conduct eliminated the question of fraud as a matter of law, and the court rightly held the lease to be binding.

It is also contended that defendants were not in fact given possession of the property and therefore not liable for the use of the building. It was admitted that they moved into the hotel in December, 1925, and had a formal opening after which they received guests for compensation. It was also admitted that they had advertised far and wide that the hotel was open for patronage and continued in possession of the building until the latter part of April, 1926, and even until after this action was brought. In the verified amended answer which they presented to the court they stated that they had endeavored "for a period of seven months to operate said hotel and apartment property." Assuming that they had the ownership of the lease and control of the property, on January 10, 1926, they offered the lease for sale stating that they had the Robson Hotel for sale, describing it at length, and that they had a ten-year lease thereon with the right of renewal for ten years more, and that the hotel was new and had been opened for a month. Later in another letter to the broker they said that the apartment part of the building was completed in 1923, and had fourteen apartments which brought a rental of $500 per month. They added that the hotel part had been completed and was "absolutely all new and modern in every possible way." A reading of defendants' testimony clearly established that they were in possession of the property on March 1, 1926, and that they continued in possession until about April 23, 1926. It is true that they were not required to pay rent until the hotel was completed. A written notice was given defendants on February 26, 1926, that the hotel was complete and that payment of rental would be required from March 1, 1926. Notwithstanding this notice they continued in the occupancy and use of the premises without response of any kind or payment of rent, but on March 10, 1926, defendants complained that the hotel was not finished. It was said that there were some cracks in the plaster, some difficulty in locking doors, and a few matters of a minor character. There was.

no abandonment or surrender of the premises, nor anything done by them indicating that the relation of landlord and tenant had ended. They continued in the use and enjoyment of the premises, but failed to pay for such use. The rent for one and one-half months was due when the action was brought. A tenant might refuse to take or hold possession or pay rent because certain improvements promised were not made, but where he takes or holds possession he necessarily waives the breach of contract as a defense to an action for rent. A tenant cannot keep both possession and rent. He must either pay rent or restore possession. In *Young v. Berman,* 96 Ark. 78, it was said:

"In the case at bar the appellant, according to the uncontroverted testimony, did not vacate the building, but continued to occupy it and hold the actual possession thereof for all the months for which recovery was had. He only tendered back the keys of the building and offered to surrender the possession thereof. A mere agreement for a surrender of the leased property, where not actually executed, does not operate as a surrender. There can be no such surrender unless, in addition to the offer or tender of surrender, there is an abandonment of the property by the lessee and a resumption of the possession by the lessor; or such a vacation and relinquishment of the property by the lessee as will justify a resumption of the actual possession by the lessor. Where the lessee continues to occupy the premises and hold the possession, there is no surrender thereof, and the mere tender of the keys or the offer to turn over the possession will not operate as such a surrender. Such a tender, or offer to surrender, is like a tender of payment without actual payment, or like an accord without satisfaction; in all of which cases there is no bar to recovery. . . . As long as the lessee remains in possession, he is not relieved of his liability to pay rent. . . ." (pp. 83, 84.)

In another case where a landlord had failed to make improvements provided for in a lease and where it was stipulated that the tenancy should not begin until all contemplated improvements were finished, and the house made ready for occupancy, it was said:

"Had appellant not entered, he would have incurred no obligation until the contemplated improvements were made, but the provision in the lease that the tenancy was not to begin until the improvements were made was one which he might waive and did waive by taking and holding possession of the premises. Being in the possession and enjoyment of the premises he necessarily became liable for the rent, although he might have had a claim for damages growing out of appellee's failure to comply with her covenant to improve." (*Gosney v. Conn,* 196 Ky. 684. See, also, *Franks v. Rogers,* 156 Ark. 120; *Bonaparte v. Thayer,* 95 Md. 548; *Harger v. Edmonds,* 4 Barb. [N. Y.] 256; 16 R. C. L. 792; 36 C. J. 334; Note in 28 A. L. R. 1455; 34 L. R. A., n. s., 977.)

A ground asserted for resisting the payment of rent was that Pearcy had been declared a bankrupt, with the result that the trustee in bankruptcy became vested with the equity of redemption, and that neither Pearcy nor plaintiff had a right to collect rent for the building. The equity of redemption was transferred to plaintiff in September, 1925. The period of redemption expired March 15, 1926, and the trustee in bankruptcy was not appointed until April 27, 1926. He had not undertaken to redeem the property or to sell the equity of redemption, but even if he had undertaken to appropriate or dispose of the property for the benefit of. creditors, it would necessarily have been unavailing. The right, while it may be assigned by the redemptioner, is not subject to levy and sale under judicial process as against the owner or his assigns.    (R. S. 60-3455.) It must be conceded that exempt property of₀a bankrupt does not become a part of the assets in bankruptcy. If the right of redemption is not subject to levy and sale under judicial process at the instance of creditors, it does not pass to a trustee in bankruptcy who has the rights and remedies of creditors and takes and holds the property of a bankrupt for their benefit. He is not vested with title to property which is exempt by the law of the state, and has no right to .administer or distribute it. Whether or not the property is exempt is determined by the law of the state which is the bankrupt's domi-·cile. What is the law of the state respecting the exemption or the right of redemption? That question has been up for consideration in this court in a number of cases, and in a later decision it was expressly held that it was not an asset of the bankrupt estate because .it was exempt under the law of Kansas, and that the trustee in bankruptcy "cannot look to that right for assets with which to pay the claims of creditors." (*Trinkle v. Chase,* 122 Kan. 781, 253 Pac. 210.) In earlier cases the intent of the legislature in the enactment of the provision has been considered and an interpretation placed upon the statute to the effect that it is exempt from the claims of creditors. (*Bank v. Grain Company,* 63 Kan. 343, 65 Pac. 676; *Kueker v. Murphy,* 86 Kan. 332, 120 Pac. 362; *Howard v. Tourbier,* 98 Kan. 624, 160 Pac. 1144; *Smith v. Shaver,* 112 Kan. 790, 212 Pac. 666; *Jones v. Perkins,* 115 Kan. 759, 225 Pac. 97; *In re Wood's Estate,* 118 Kan. 548, 235 Pac. 864; *Slabaugh v. State Bank,* 123 Kan. 484, 256 Pac. 139.)

It may be said that the defendants have not been ousted or their possession disturbed by the trustee or anyone else, and they are

hardly in a position to challenge the title of their landlord, but however that may be, the right of redemption being exempt the trustee acquired no title to it nor any right of disposal. Upon the admission of defendants and the undisputed facts, we conclude that the court arrived at a correct result, and its judgment is affirmed.

BURCH, J., not sitting.