JONES v. WAKEENEY STATE BANK et al.

No. 1722.

Circuit Court of Appeals, Tenth Circuit.

Jan. 3, 1939.

John R. Parsons, of Wakeeney, Kan., for appellant.

Kenneth W. Wagner, of Topeka, Kan. (W. H. Wagner and William Wagner, Jr., both of Wakeeney, Kan., on the brief), for appellees.

Before LEWIS, BRATTON and WILLIAMS, Circuit Judges.

LEWIS, Circuit Judge.

Appellant filed her petition under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, on October 14, 1936, in which she alleged that she had resided at WaKeeney, Kansas, for the greater portion of the preceding six months; that she owed debts which she was unable to pay in full; that she was willing to surrender all her property for the benefit of creditors, except such as was exempt, and desired to obtain the benefit of the Act of Congress relating to Bankruptcy. She filed schedules of her property showing several tracts of land subject to mortgages, and some of those mortgages were then under foreclosure proceedings in the state district court of Kansas. Three of them are involved here. She had no personal property so far as the schedules disclose. Decrees of foreclosure were entered against each of the three tracts.

Mrs. Elnora O'Toole was a mortgagee as to one tract and plaintiff in a foreclosure suit. A sale of the land described in that suit took place on November 25, 1935, and she was the purchaser at the sale. That sale was confirmed by the court on November 26, 1935, and the sheriff in accordance with the laws of Kansas and the decree issued to her a certificate of purchase. The decree gave the bankrupt eighteen months from that day within which to redeem the land from sale. She did not redeem, and the sheriff issued and delivered to Mrs. O'Toole's administrator a deed conveying the land to him on March 7, 1938.

The WaKeeney State Bank held a mortgage on real estate in the town of WaKeeney and also obtained a foreclosure decree in May, 1936. The state court con-

firmed the sale on the 16th day of that month. Certificate of purchase was issued to the purchaser, the bank. Eighteen months was allowed by the court within which to redeem. No redemption was made, and on March 7, 1938, the sheriff executed and delivered to the bank a deed to the property so sold.

Howard Snyder held a mortgage on another tract. He obtained a foreclosure decree of his mortgage. He received a certificate of purchase, but assigned it to appellee Shaw. The same period of redemption from sale was given in his case. The mortgagor did not redeem, and Shaw received a deed from the sheriff on June 3, 1937, for that tract.

Mrs. O'Toole's heirs, The WaKeeney State Bank and Shaw each filed a petition asking that they and the separate real estate which each had separately purchased under the decrees be released from the bankruptcy proceedings as their property not subject to administration as part of the assets of the bankrupt.

 The bankrupt filed answers to the petitions of appellees. In one answer she alleged that the conciliation commissioner had refused to entertain any proposition and that she was unable to proceed. In another she alleged that she desired to proceed and obtain a moratorium as provided by subsection (s) of Section 75, 11 U.S.C.A. § 203(s), and that the conciliation commissioner had refused to proceed; that as to the WaKeeney State Bank the foreclosure sale made under its mortgage was invalid and that the confirmation of that sale by the state district court was void, but no ground or reason for that assertion is stated in the pleadings or otherwise appears in the record. In answer to appellee Shaw's petition it is alleged:

"That this debtor intends to proceed with an offer of composition with her creditors and in case she fails to obtain an acceptance of said offer she intends to file an amended petition as provided by section (s) of said act and obtain a moratorium as provided by said law and provided by the bankruptcy laws of the United States but is prevented from doing so by the said acts of the said conciliation commissioner."

No acts of that character by the commissioner are set forth. She asked that all the petitions for withdrawal of lands purchased by appellees be dismissed. These petitions of appellees were filed in court on

August 20, 1937, and appellant's answers thereto were filed September 3, 1937. The District Judge had a hearing on the petitions of appellees and appellant's answers thereto, made findings of fact and stated his conclusions of law, none of them challenged by either party, and filed them on February 26, 1938. The 7th finding of fact is:

"that after the first meeting of the creditors held on July 13, 1937, on notice duly given the Conciliation Commissioner filed his report in this matter, * * * that more than three months has elapsed since the filing of said report by the Conciliation Commissioner, and that no amended petition has been filed in this case by the debtor as provided by law."

The record shows that appellant on February 15, 1938, did file an amendment to her petition of October 14, 1936, as follows:

"Comes now Clara J. Jones of WaKeeney, in the County of Trego, and District of Kansas, and respectfully represents:

"That she is a widow residing at WaKeeney, in Trego County, Kansas, that the principal part of her income is derived from farming operations, that she has failed to obtain the acceptance of the majority in amount and number of her creditors whose claims are affected by the proceedings for an extension, and hereby amends her petition and asks to be adjudged a bankrupt and prays that she may have the benefits of Section 75(s) of the Bankruptcy Act of 1898 as amended.

"Clara J. Jones,
"John R. Parsons, Attorney."

Attached thereto is her affidavit to the truthfulness of said amended petition. This record does not show that any action of any kind was ever taken on that petition, or that any proceeding was had under it, or that it was ever called to the attention of the District Judge. After record on appeal was brought here and printed the appellees filed a motion to dismiss the appeal. It must be granted. Marcy v. Miller, 10 Cir., 95 F.2d 611.

But there is another matter that needs consideration. After the appeal was allowed by the District Judge the appellees filed a petition here for the appointment of a receiver to preserve some of the property involved pending the appeal and its disposition. They alleged that Mrs. Jones was and had been at all times in actual posses-

sion of the real estate either in person or through tenants, and has refused and still refuses to deliver possession to any of them or account for any of the income, rents or profits from the real estate or any part thereof though demand had been made, notwithstanding sheriff's deed had been executed and delivered to each purchaser; that she and her tenants were committing waste on said real estate and neglecting to keep same in repair; that she and her tenants were disposing of certain portions of said real estate, all to the damage of appellees; that unless a receiver is appointed to take charge of the property and of the rents, profits and income therefrom there is danger of the same being lost, removed or materially injured; that she and her tenants are financially unable to account for any damage which the appellees might suffer while the appeal is being disposed of; and that a receiver be appointed to protect the real estate against waste and impound the rents, profits and income which may accrue from time to time during the pendency of this action, the same to be held subject to the orders of this court.

We entertained the petition and appointed a receiver on July 1, 1938. As to the O'Toole tract, deed was executed and delivered to her administrator on March 7, 1938. Deed had been issued and delivered to The WaKeeney State Bank by the sheriff on March 7, 1938, and to Shaw, assignee of the Howard Snyder certificate of purchase, on June 3, 1937. The receiver made report on October 3, 1938, stating all he had done touching the property up to that time.

■ Tardy's Smith on Receivers, 2d Ed., page 2180, says:

"The right of an appellate court to appoint a receiver pending an appeal for the purpose of preserving the property pending its decision has been exercised and would appear to be a right inherent in any court where the appointment is made for strictly preservation purposes."

The receiver reported that as to the land purchased by Shaw the tenant harvested the wheat crop thereon on July 12, 13 and 14, 1938, and delivered the landlord's share, amounting to 161.20 bushels, to an elevator company, and thereafter on July 20, 1938, the receiver sold the 161.20 bushels for 42¢ a bushel, amounting to $67.67, and had the same to his credit in bank. He made no expenditures.

As to the land purchased by Mrs. O'Toole, he reported that on August 26, 1938, he sold 72 yards of sand from a pit on the land to a contractor for 10¢ a yard, which was paid to the receiver September 9, 1938, and which is now a bank deposit to his credit; that prior to his appointment the City of WaKeeney entered into an agreement with appellant and the executor of the estate of Elnora O'Toole, deceased, for the purchase of sand from a pit on the above property; that under this agreement the City of WaKeeney hauled 524 yards of sand from said pit between the 21st day of August, 1937, and the date of the appointment of the receiver, July 1, 1938, and since the date of his appointment it has hauled 198 yards of sand therefrom. The receiver received a check in full payment for the sand so taken by the city for $72.20, and that sum is credited to the receiver in the bank.

That as to the lots 10 and 11 in block 41 in the City of WaKeeney purchased by the WaKeeney State Bank at foreclosure sale, he demanded possession from tenants who refused; it had been used as a garage; that he brought an action to evict in the county court, and the court on July 28, 1938, entered an order granting possession of the premises to the receiver, but stayed execution for 15 days. No appeal was taken from that order and the receiver went into possession on August 15, 1938.

"At that time the roof leaked, the cement floor was cracked and chipped out, front and back doors were in need of repair, a large plate glass was out from the front and the building was dirty. The receiver was unable to rent the building because of its run down condition. He talked with the bank, the holder of the sheriff's deed to the property, and the bank obligated itself to pay $585.23 for repairs so the building would be rentable."

He made the repairs as agreed at the expense of the bank and collected $50 for the first month's rent which is on deposit to his credit. It may be said that these repairs and the suit in the county court were without the knowledge of this court until after they were made and had occurred.

■ In Kelso v. Norton, 65 Kan. 778, 70 P. 896, 898, 93 Am.St.Rep. 308, it is said by Pollock, Judge, speaking for the court:

"In this state, by force of statute, a mortgage retains but few, if any, of its common-law attributes. It is a mere security contract, incident to the debt. The

mortgagor, both before and after default, is entitled to the possession of the premises. The only legal right of the mortgagee is to foreclose the equity of redemption, and obtain a decree of sale in satisfaction of his debt. * * * The mortgagors were under no legal obligation to yield possession to the mortgagee, but might have stood upon their legal rights, and refused to surrender possession until a valid foreclosure decree and sale were obtained, and a deed and writ of assistance based thereon had issued to place the purchaser in possession."

In Zimmerman v. Rose, 111 Kan. 22, 206 P. 336, a mortgage foreclosure case, it was said in referring to Marshall v. Shepard, 23 Kan. 321:

"As early as [Marshall v. Shepard], 23 Kan. 321, it was held that the purchaser at a judicial sale obtains an inchoate equitable title to the property; that by the confirmation the value of the purchaser's title is enhanced; but it was held still to be only an equitable title, which was further enhanced by the execution of the sheriff's deed. In the opinion it was said:

" 'As to all persons who had actual notice of the deed, their (the purchaser's) title was then complete and perfect, both legal and equitable. Conveyance Act, § 21. But as to all others, their title was at most only an equitable title.' * * *

"In Robinson v. Hall, 33 Kan. 139, 5 P. 763, it was held that the purchaser at a sheriff's sale is not ordinarily entitled to the possession of the premises as a matter of right until the deed is executed in conformity with the order of confirmation. The question was referred to in the case of Haish v. Pollock, 79 Kan. 624, 101 P. 3. In the opinion it was said:

" 'In a few jurisdictions it is held that title may pass at a sheriff's sale without the actual execution of a deed, but the general rule is to the contrary.' "

In conclusion it was said: "But the title does not pass until the execution of the sheriff's deed." Brendle v. Hudson, 146 Kan. 924, 73 P.2d 1013; Goodwin v. Smith; 49 Kan. 351, 31 P. 153, 17 L.R.A. 284, 33 Am.St.Rep. 373; Smith v. Hague, 25 Kan. 246; Smith v. Leighton, 38 Kan. 544, 17 P. 52, 5 Am.St.Rep. 778.

For many years it has been the established rule in Kansas that on confirmation by the court of judicial sale of lands full equitable title to them immediately vests in the purchaser subject to the statutory right of the mortgagor to redeem at any time during the redemption period or beyond that period until deed has been demanded of and issued by the sheriff. The mortgagor has a right to remain in possession until deed issued, and until it issued he holds legal title as trustee for the purchaser. He, his vendees or heirs may acquire his right of possession during the redemption period, but his creditors may not take it from him or from his heirs or vendees by execution or otherwise. Relative the interest acquired by a purchaser at confirmed judicial sale, the Supreme Court of Kansas has in different opinions defined it thus: "an equitable title", a "full equitable title", "a vested equitable title", a "right to a deed from the sheriff". "A sale in chancery is not complete until confirmed, but when confirmed it passes to the purchaser all the interest the defendant possessed, and the decree ordered sold." "The naked title remained, it is true, but it was held in trust for the purchaser, and he is entitled to a deed, as we have seen, upon demand." "The judicial confirmation of a foreclosure sale vests in the purchaser a full equitable right to the mortgaged premises, whether any deed is executed and delivered to him or not. The colorable legal title which, until the recording of a foreclosure deed, the mortgagor retains, is held by him, and those claiming under him, merely in trust for the purchaser and those claiming under him." Bell v. Diesem, 86 Kan. 364, 121 P. 335, 337; Zimmerman v. Rose, 111 Kan. 22, 206 P. 336; McCartney v. Robbins, 114 Kan. 141, 217 P. 311; Stang v. Redden, C.C.Kan., 28 F. 11.

■■ The statutes of Kansas for many years have contained this (Gen.Stat.Kan. 1935, Sec. 60-3455):

"The rights of the defendant owner in relation to redemption may be assigned or transferred, and the purchaser or assignee thereof shall have the same right of redemption as the defendant owner; but the right of redemption shall not be subject to levy or sale on execution."

In construing that statute the Supreme Court of Kansas has repeatedly held that the part of the section following the semicolon is an exemption to the mortgagor of the right to remain in possession of the mortgaged lands until the expiration of the period of redemption. In Bankers' Mortgage Co. v. Robson, 123 Kan. 746, 256 P. 997, 1001, the Supreme Court of that state said:

"Whether or not the property is exempt is determined by the law of the state which is the bankrupt's domicile. What is the law of the state respecting the exemption or the right of redemption? That question has been up for consideration in this court in a number of cases, and in a late decision it was expressly held that it was not an asset of the bankrupt estate because it was exempt under the law of Kansas, and that the trustee in bankruptcy 'cannot look to that right for assets with which to pay claims of creditors.' Trinkle, Trustee v. Chase, 122 Kan. 781, 253 P. 210. In earlier cases the intent of the Legislature in the enactment of the provision has been considered and an interpretation placed upon the statute to the effect that it is exempt from the claims of creditors. Bank v. Kansas Grain Co., 63 Kan. 343, 65 P. 676; Kueker v. Murphy, 86 Kan. 332, 120 P. 362; Howard v. Tourbier, 98 Kan. 624, 160 P. 1144; Smith v. Shaver, 112 Kan. 790, 212 P. 666; Jones v. Perkins, 115 Kan. 759, 225 P. 97; In re Wood's Estate, 118 Kan. 548, 235 P. 864; Slabaugh v. State Bank, 123 Kan. 484, 256 P. 139."

Section 6 of the Bankruptcy Act, 11 U. S.C.A. § 24, is this:

"This Act [title] shall not affect the allowance to bankrupts of the exemptions which are prescribed by the State laws in force at the time of the filing of the petition in the State wherein they have had their domicile for the six months or the greater portion thereof immediately preceding the filing of the petition."

■ On the facts stated and the Receiver's report it appears that the sand was taken from a pit on the tract covered by Mrs. O'Toole's mortgage; that that part of the tract was principally used for that purpose and only valuable because of the deposit; and that all of it taken before Mrs. O'Toole's administrator received a deed therefor on March 7, 1938, should be credited to Mrs. Jones, especially so in view of the fact that Mrs. O'Toole's executor joined in the agreement with Mrs. Jones (the terms of said agreement not appearing here) that the city might have the sand. Of course, if Mrs. O'Toole's executor's rights in the sand to be taken are fixed by the contract it should control throughout as to the amount collected therefor. So much as was taken either before or after the date of the deed should control if it specifies the respective interest of Mrs. Jones and Mrs. O'Toole's executor. If it does not control, the proceeds for the sand should be divided between the two, giving to Mrs. Jones her share taken preceding the date of the deed and to Mrs. O'Toole's executor the proceeds taken after the date of the deed.

■ On the tract covered by the Howard Snyder mortgage and purchased by him at the foreclosure sale the sheriff's certificate of purchase was assigned to F. D. Shaw, and he received a deed therefor from the sheriff on June 3, 1937. Inasmuch as Shaw was absolute owner of that tract from and after June 3, 1937, there would seem to be no doubt that he was entitled to the landlord's share of the wheat harvested on that tract July 12, 13, and 14, 1938. The receiver sold it for $67.76, and he will pay that sum to Shaw. Receipts should be taken by the receiver in duplicate for each disbursement, and one of each attached to the report.

The building on the town lots which was repaired seems to have been at the expense of the bank by agreement. The receiver heretofore reported that he had in his possession the first month's rent of $50. He will account to that bank for that sum and such other sums as he may have received from that source.

The receiver will be allowed $60 tentatively for his services to be taxed in equal proportions to each of the appellees and paid to him by them. When he has so reported, with confirmation by each of the appellees, he and the surety on his bond will be discharged. No application for the allowance of an appeal was made to this court. Appeal dismissed.